**TRANSCANADA PIPELINES LIMITED, et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Western Gas Marketing Limited, et al., Intervenors.**

Nos. 91–1380, 91–1381, 91–1618, 91–1619, 93–1107, 93–1151, 93–1153, 93–1155, 93–1158, 93–1245 and 93–1246.

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1994.

Decided June 10, 1994.

Suggestion for Rehearing In Banc Denied Aug. 25, 1994.

James D. McKinney, Jr. and William W. Brackett, argued the cause, for petitioners TransCanada PipeLines Ltd., Great Lakes Gas Transmission Ltd. Partnership, Midland Cogeneration Venture Ltd. Partnership, Northern Minnesota Utilities and ANR Pipeline Co. With them on the joint briefs were William R. Mapes, Jr., Ted Gerarden, Narinder J.S. Kathuria, Terry O. Brackett, James F. Bowe, Jr., Mary E. Baluss, Kristine L. Delkus, Daniel F. Collins, Mark G. Cook, and Richard W. Miller, Jr. Kenneth L. Glick, and Alex A. Goldberg entered appearances, for petitioner Great Lakes Gas Transmission Ltd. Partnership.

Jill Hall, Atty., F.E.R.C., argued the cause, for respondent. With her on the brief were Susan Tomasky, Gen. Counsel, and Jerome M. Feit, Sol., F.E.R.C.

Emmitt C. House argued the cause, for intervenor Natural Gas Pipeline Co. of America. With him on the joint brief of intervenors Natural Gas Pipeline Co. of America, Northern Natural Gas Co., Texas Eastern Transmission Corp., Michigan Consol. Gas Co., Consumers Power Co., and Northern States Power Co. (Minnesota) and Northern States Power Co. (Wisconsin) were Georgetta J. Baker, Paul W. Mallory, Sherrie N. Rutherford, F. Nan Wagoner, M. Frazier King, Jr., Kathleen C. Lake, David T. Field, G. James Van Heyde, Jeffrey M. Petrash, Mary A. Murphy, William M. Lange, Francis X. Berkemeier, Deborah A. Moss, and Frederick J. Killion.

On the joint briefs of intervenors Western Gas Marketing Ltd., Alberta Petroleum Marketing Com'n and Canadian Ass'n of Petroleum Producers and Union Gas Ltd. were Paul H. Keck, Robert I. White, Nancy A. White, James H. Holt, Nicholas W. Fels, and Douglas M. Gleason.

Terry O. Brackett, Daniel F. Collins, Mark G. Cook, Christine Rose–Murray Pembroke, and Richard I. Miller entered appearances for ANR Pipeline Co.

Nicholas W. Fels and Jonathan T. Foot entered appearances, for intervenor Central Gas Ontario, Inc., and intervenor Union Gas Ltd.

Paul W. Fox entered an appearance, for intervenor Progas Ltd.

Robert H. Benna, Robert Baker, David E. Williams, and Frances M. Kilborne entered appearances, for intervenor Tennessee Gas Pipeline Co.

Charles H. Shoneman entered an appearance, for intervenors Northeast Energy Associates and North Jersey Energy Associates.

Narinder J.S. Kathuria, William R. Mapes, Jr., James D. McKinney, Jr., Alex A. Goldberg, William G. Stafford, and Kenneth L. Glick entered appearances, for intervenor Great Lakes Gas Transmission Ltd. Partnership.

Marilyn Ann Specht, Mary E. Baluss, and Kristine L. Delkus entered appearances, for intervenor Northern Minnesota Utilities.

Georgetta J. Baker, Emmitt C. House, Paul E. Goldstein, Paul W. Mallory, and Carol A. Smoots entered appearances, for intervenor Natural Gas Pipeline Co. of America.

Robert W. Burke, Jr., James F. Bowe, Jr., Laurence E. Skinner, and Steven H. Lasher entered appearances, for intervenor Midland Cogeneration Venture Ltd. Partnership.

Frederick J. Killion, Gene R. Sommers, and Donald K. Dankner entered appearances, for intervenors Northern States Power Co. (Minn.) and Northern States Power Co. (Wis.).

Joseph R. Hartsoe, William H. Kockenmeister, Eric Jon Aafedt, and Martin J. Marz entered appearances, for intervenor Northern Natural Gas Co.

Peter G. Esposito entered an appearance, for intervenor Brymore Energy.

Thomas M. Patrick, James Hinchliff, Mark J. McGuire, and Mary Klyasheff entered appearances, for intervenors Peoples Gas Light and Coke Co. and North Shore Gas Co.

Mary Ann Walker entered an appearance, for intervenor Southeastern Michigan Gas Co.

Roger A. Berliner and Jane E. Stelck entered appearances, for intervenors Alberta Petroleum Marketing Com'n, Canadian Ass'n of Petroleum Producers.

Ted P. Gerarden entered an appearance, for intervenor TransCanada PipeLines Ltd.

Joel Kaufman, Ronald D. Eastman, Thomas J. Casey, Henry J. Boynton, Frank J. Kelley and Don L. Keskey entered appearances, for intervenors State of Michigan and Michigan Public Service Com'n.

Frederic G. Berner, Jr. entered an appearance, for intervenor Altamont Gas Transmission Co.

Before WALD, EDWARDS, and SENTELLE,. Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Great Lakes, a pipeline company, TransCanada, its principal customer, and other interested firms petition for review of several orders of the Federal Energy Regulatory Commission (the "Commission"): *Great Lakes Gas Transmission L.P.*, 57 FERC ¶ 61,140, 61,512 (1991) (*"Opinion 367"*), *reh'g denied*, 62 FERC ¶ 61,101, 61,713 (1993) (*"Opinion 367–A"*); *Great Lakes Gas Transmission L.P.*, 57 FERC ¶ 61,141, 61,534 (1991) (*"Opinion 368"*), *reh'g denied*, 62 FERC ¶ 61,102, 61,731 (1993) (*"Opinion 368–A"*). The orders required Great Lakes to recover the costs of two recent expansions through "incremental" rates rather than "rolled-in" rates.[1] Petitioners claim that the Commission arbitrarily departed from its own precedent, violated the nondiscrimination provisions of the Natural Gas Act, imposed unfair retroactive penalties, and used hearing procedures that contravened the Administrative Procedure Act.

■ We hold that the Commission employed a standard to judge the permissibility of rolled-in rates that neither accords with the Commission's precedent nor is compelled by our decisions. As the Commission failed adequately to explain the adoption of the new test, we remand the orders for reconsideration.[2]

I

Great Lakes operates an interstate pipeline that runs some 2,000 miles from the Canadian border in Wisconsin to the Canadian border in eastern Michigan. TransCanada is an affiliate of Great Lakes and uses about 80% of the pipeline's capacity. The present case arises from two rate filings under Section 4 of the Natural Gas Act, 15 U.S.C. § 717c (1988), in which Great Lakes sought to recover the cost of several expansion projects designed to increase the pipeline's capacity.

*Opinion 367*

The filing at issue in *Opinion 367* covered expansion projects built to service petitioners TransCanada and Northern Minnesota Utilities. The projects cost some $557 million, which more than doubled Great Lakes' preexisting rate base from $393 million to $950 million. Great Lakes filed a rate increase request that proposed rates to be calculated by rolling in the expansion costs. The Commission set all the issues for an evidentiary hearing except the question of whether rolled-in rates should be allowed; on that question the Commission ordered "paper hearing" procedures. *See Great Lakes Gas Transmission L.P.*, 55 FERC ¶ 61,336, 61,990 (1991).

After considering the submissions the Commission held that Great Lakes must "specifically address and justify rolled-in rates by showing that systemwide benefits to existing customers are commensurate with the increase in rates." *See Opinion 367*, 57

---

1. Under incremental pricing the costs of particular facilities are assigned to particular customers and recaptured by increasing the rates charged to those customers. Under rolled-in pricing the costs of the facilities are added to the pipeline's total rate base and recaptured by an increase in the general rate charged to all customers in proportion to the pipeline capacity they use.

2. Our disposition of the case makes it unnecessary to consider the independent claim, advanced by petitioner Northern Minnesota Utilities ("NMU"), that the costs particularly attributed to NMU's expanded service should have been rolled in even if the costs attributed to other petitioners were incrementally priced.

FERC ¶ 61,140 at 61,521. Finding that "the benefits [of the expansions] do not equal or exceed the costs," *id.* at 61,522, the Commission accordingly ordered that the costs of the expansions be recouped through incremental pricing. *Id.* at 61,525–26. The petitioners' requests for rehearing were subsequently denied. *See Opinion 367–A,* 62 FERC ¶ 61,101 at 61,716.

### Opinion 368

In this proceeding the Commission considered Great Lakes' request to recover rolled-in rates for two expansion projects built to serve petitioners TransCanada and Midland Cogeneration Venture, with a total cost of $190 million. The rate filing was heard by an Administrative Law Judge ("ALJ") with the participation of Commission staff. The ALJ ruled that rolled-in rates were permissible under Commission precedent. *See Great Lakes Gas Transmission L.P.,* 55 FERC ¶ 63,037, 65,209 (1991) (*"Initial Decision"*). On appeal the Commission reversed, holding that the rates should be priced incrementally under the same "commensurate benefits" test employed in *Opinion 367,* and confirmed its order on rehearing. *See Opinion 368,* 57 FERC ¶ 61,141 at 61,542; *Opinion 368–A,* 62 FERC ¶ 61,102 at 61,745.

### II

### A

Petitioners contend that the standard by which the Commission judged Great Lakes' rate filing represents an unexplained departure from Commission precedent, and thus constitutes arbitrary decisionmaking under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A) (1988); *Michigan Consol. Gas Co. v. FERC,* 883 F.2d 117, 122 (D.C.Cir.), *cert. denied,* 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 937 (1989). They assert that the Commission's previous practice was to routinely grant roll-in requests when the pipeline could show that (1) the added facilities would be completely integrated into the mainline system and (2) the facilities would produce some systemwide benefits, qualitatively described. In these proceedings, however, the Commission suddenly

adopted a "commensurate benefits" test without adequate explanation.

The Commission concedes that it weighed costs and benefits, but maintains that it has always done so. The only distinctive feature of the Great Lakes orders was that the Commission subjected the claimed benefits to a more rigorous scrutiny because the magnitude of the projects threatened a massive shift of costs onto existing customers. All concerned thus agree on the nature of the test the Commission applied in the present orders; the dispute stems rather from opposed descriptions of the Commission's precedent.

Petitioners have the better of the argument. At least since *Battle Creek Gas Co. v. FPC,* 281 F.2d 42 (D.C.Cir.1960), the dominant theme of energy pricing policy has been to allow rolled-in rates whenever the expanding pipeline could show that the new facilities would be integrated into the mainline system and would confer some positive benefit on all the customers of the system. In *Battle Creek* the court undertook a general description of the Federal Power Commission's policy which, although not binding on the FERC, captures the historical understanding. *See id.* at 46–47. In particular, the court conceived the "difficult issue of fact" in this type of proceeding to be whether a particular facility counts as "integrated" or "segregated," *id.* at 47, *not* (as the Commission now claims) whether admittedly integrated facilities provide adequate benefits to existing customers.

Until quite recently the approach detailed in *Battle Creek* has prevailed without serious challenge. A particularly clean example of the Commission's normal practice appears in *Great Lakes Gas Transmission Co.,* 45 FERC ¶ 61,237, 61,695 (1988). There the Commission reversed an ALJ's decision to incrementally price new facilities. Insofar as the Commission claims that it has always balanced the costs and benefits of new facilities, the discussion in that case refutes it:

> The Commission reverses the ALJ's decision and concludes that the rates ... should be computed on a rolled-in basis. It is true that the facilities were built for [a particular customer's benefit].... How-

ever, the question is whether the T–6 and T–9 facilities have been shown on this record to be beneficial to other customers of Great Lakes.... The Commission believes that all mainline facilities benefit all customers even though certain facilities may have been added at some time to increase mainline capacity in order to serve a particular customer.... The Commission cautions that it is not necessary to have measurable benefits to justify rolling-in costs. It is sufficient that the quality of the system's services is enhanced by the presence of the facilities in question.

*Id.* at 61,700–01 & n. 55.

■ The Commission points to a pair of cases decided four months before the Great Lakes orders presently under review. In *Colorado Interstate Gas Co.,* 56 FERC ¶ 61,-015, 61,066 (1991), and *Northwest Pipeline Corp.,* 56 FERC ¶ 61,006, 61,033 (1991), the Commission stated that "the pipeline must specifically address and justify rolled-in rates by showing system-wide benefits to existing customers commensurate with the increase in rates." *Colorado,* 56 FERC ¶ 61,015 at 61,074; *Northwest,* 56 FERC ¶ 61,006 at 61,-045. But in neither case did the Commission acknowledge its departure from precedent or give any explanation for the change; and the result of that silence is that neither case can justify application of the commensurate benefits test to Great Lakes. *See Professional Airways Sys. v. FLRA,* 809 F.2d 855, 860 (D.C.Cir.1987) ("Latter-day constancy to a new rule or principle does not relieve the [agency] of its obligation to distinguish or overrule its own inconsistent precedent.").

■ The Commission also argues that, whatever its previous policies, our decision in *Algonquin Gas Transmission Co. v. FERC,* 948 F.2d 1305 (D.C.Cir.1991), in effect required adoption of the commensurate benefits test. There the Commission ordered a roll-in of costs a pipeline had previously recovered incrementally, holding that the facilities were on the mainline system and thus were "the type of facilities benefitting all customers which the Commission traditionally requires to be rolled in." 948 F.2d at 1310 (quoting Commission order). The court re-

manded, holding that the Commission's "conclusionary statements" about the benefits of rolled-in rates did not suffice to carry its burden of producing substantial evidence that the preexisting incremental rates were unjust and unreasonable under Section 5(a) of the Natural Gas Act, 15 U.S.C. § 717d. *Id.* at 1313.

*Algonquin* undoubtedly does require a reasonably specific qualitative description of the systemwide benefits of an integrated facility. But the Court was careful not to require a balancing of costs and benefits (much less a quantification thereof), and indeed confirmed that the general test for rolling-in was the same that Great Lakes discerns in Commission precedent:

In *Great Lakes Gas Transmission Co.,* 45 FERC ¶ 61,237 at 61,701 n. 55 (Nov. 17, 1988), the Commission stated that a roll-in is warranted when "the quality of the system's services is enhanced by the presence of the facilities in question." We do not quarrel with that standard.... What we do require, however, is that the Commission, before ordering a roll-in under Section 5(a), offer more than a conclusionary statement that the existence of system-wide benefits renders it unjust to allocate facilities costs incrementally.

*Algonquin,* 948 F.2d at 1312–13. The commensurate benefits test, therefore, represents a departure from precedent that cannot be said to have been compelled by our supervening decision.

B

The novelty of the Commission's test required a reasoned explanation for the change. Our ability to discern such an explanation is hampered by the Commission's claim on appeal that no change in course took place. Nonetheless both orders obliquely recognized and sought to justify the new test. The Commission stated in *Opinion 367* that:

The basic test has always involved a weighing of costs and benefits. However, in the past, the Commission took a broader view regarding the value of system expansions to existing customers than we have in recent cases. This is, in part, because the

increased costs to existing customers resulting from rolled-in pricing were generally relatively small compared to the obvious systemwide benefits in the form of increased capacity, reliability, and flexibility. However, more recently, the Commission's focus on the value of the benefits of expansions to systemwide customers has intensified as costs have risen considerably in relation to the benefits.

57 FERC ¶ 61,140 at 61,521. Much the same sort of tentative explanation appeared in *Opinion 368. See* 57 FERC ¶ 61,141 at 61,-539.

In these passages the Commission "cross[ed] the line from the tolerably terse to the intolerably mute." *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923 (1971). Too much is lacking that a reasoned explanation would have supplied. In what follows we both canvass the unanswered questions and detail our reasons for finding inadequate the answers that were given.

The Commission's assertion that the costs of expansion have recently increased in relation to benefits failed to address record evidence to the contrary. Great Lakes attempted to show that, in constant 1990 dollars, the average investment cost of the expansion facilities (calculated per Mcf/mile) was some 15% lower than the average historical investment cost of the pre-expansion components of the Great Lakes system. *See* Exh. GL–44, *System Investment Cost per MMcf–Mile,* Joint Appendix ["J.A."] 3392–93. The Commission failed to make clear why the gross cost of an expansion bears on the proper choice of rate structure if that cost does not have a proportionate effect on the rates charged to pre-expansion customers. Great Lakes maintains that high cost need not produce higher rates, because large expansions increase the pipeline's capacity and thus increase the pipeline's revenue as well.

The Commission, of course, has no obligation to apply that theory, but given the record support offered by Great Lakes it should at least respond to it. The Commission made but a cursory effort to calculate the rate increase to pre-expansion customers that a roll-in of the expansion costs would

produce. In *Opinion 368,* for example, the Commission asserted that "the rate increase as a result of these expansions totalled $33.3 million." 57 FERC ¶ 61,141 at 61,540. That figure, however, represents the total rate increase requested in the filing. *See Initial Decision,* 55 FERC ¶ 63,037 at 65,210. The Commission disregarded Great Lakes' claim that the relevant figure under the commensurate benefits analysis should be the rate level that actually obtains after the total increase is offset by the additional revenues attributable to the expansion, revenues that would be dedicated to lowering existing customers' rates.

The Commission seems to have adopted a similar distinction between total cost and rate effects in *Northwest Pipeline Corp.,* 59 FERC ¶ 61,289, 62,045 (1992) ("*Northwest II*")—a case decided while the Commission was considering whether to grant or deny rehearing of *Opinions 367* and *368* in the Great Lakes proceeding. *Northwest II* granted a declaratory order for rolled-in rates because the pipeline identified systemwide benefits such as "improved system reliability" and "increased compression." *See Northwest II,* 59 FERC ¶ 61,289 at 62,057. The Commission employed a solely qualitative analysis of benefits, nowhere mentioned the commensurate benefits test employed in the Great Lakes decisions, and in the end allowed the rolled-in rates. In particular the Commission noted that despite the large cost of the expansion (a total rate increase of about 25%), the actual effect on the rate charged to existing customers would be fairly minor—an increase of some $.05 per MMBtu. *Id.* at 62,057–58. Neither of the rehearing opinions in the Great Lakes proceeding addressed *Northwest II.* We must therefore remand to secure an official explanation of the apparent inconsistency between the two proceedings.

The Commission's explication of the commensurate benefits test displays a further deficiency. The Natural Gas Act prohibits rates that are "unduly discriminatory" or "preferential." 15 U.S.C. §§ 717c(b), 717d(a). Of course rate differences founded on relevant differences of fact do not constitute rate discrimination. *See TransCanada*

*PipeLines Ltd. v. FERC*, 878 F.2d 401, 413 (D.C.Cir.1989). But petitioners contend that incremental pricing produces rate discrepancies unrelated to any rational theory of cost causation and therefore violates the Act.

We do not reach that ultimate question of statutory construction, for the Commission faltered in its antecedent duty to explain how incremental pricing relates to the prohibition against discriminatory rates. The orders were content to state that

> these price differentials [caused by incremental rates] merely reflect the costs to expand the pipeline's capacity at a different time and for different customers.... [T]he cost of providing service to [petitioners] required major capacity additions at a much greater cost than the cost of providing service to existing shippers.

*Opinion 367*, 57 FERC ¶ 61,140 at 61,525; *see also Opinion 368*, 57 FERC ¶ 61,141 at 61,542. That explanation glossed over two of petitioners' principal arguments that ought, at least, to have received some response.

First, petitioners insist that expansions are caused by the requirements of the existing customers as well as the expansion customers; all customers create the need for the total system capacity. The Commission acknowledged that Great Lakes is a "fully integrated system, both physically and operationally." *Opinion 367*, 57 FERC ¶ 61,140 at 61,522. On petitioners' argument it is only a historical accident that certain customers create capacity demand at certain times. In the same vein, construction costs appear to fluctuate widely and rapidly over time, due to variation in engineering requirements, labor and materials costs, and inflation. *See* Exh. GL–19, *Investment Costs per Mmcf-mile*, J.A. 995–98 (showing 2,500% variation in unit investment costs since inception of Great Lakes system). Thus petitioners complain that under incremental pricing a customer whose service request happens to prompt a relatively expensive addition to an integrated system must bear a much greater rate than a more fortunate customer. Whether or not petitioners' theories prove persuasive, they deserve more extended treatment than they were afforded.

Second, the Commission should consider the consequences of incremental pricing for future customers who subscribe to expansion services that were incrementally priced when first built. Commission counsel indicated at oral argument that the cost of providing service to such customers would be rolled in to the portion of the rate base attributable to the expansion facilities, resulting in a multi-tiered system under which the various classes of customers would each pay a separate rate. Of course that representation cannot bind the Commission itself, *cf. SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), but if that is indeed the Commission's plan it should consider on remand whether the rate differentials and administrative costs produced by such a system can be squared with the Act.

### III

The orders are remanded for further proceedings consistent with this opinion.

*It is so ordered.*