TENNESSEE VALLEY MUNICIPAL GAS ASSOCIATION, et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

ANR Pipeline Company, et al., Intervenors.

Nos. 93–1566, 93–1837, 94–1016, 94–1023, 94–1357 and 94–1562.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1998.

Decided April 21, 1998.

Jennifer N. Waters, Washington, DC, argued the cause for petitioners East Tennessee Group and Tennessee Valley Municipal Gas Association. With her on the briefs were Jack M. Irion, Glenn W. Letham and Channing D. Strother, Jr, Washington, DC.

Lee A. Alexander, Washington, DC, argued the cause for petitioners Ocean State Power, et al. With him on the briefs were Stefan M. Krantz and Yoav K. Gery, Washington, DC. Carl M. Fink, Portland, OR, entered an appearance.

Edward S. Geldermann, Attorney, Bethesda, MD, Federal Energy Regulatory Commission, argued the cause for respondents. With him on the brief were Jay L. Witkin, Solicitor, John H. Conway, Deputy Solicitor, Susan J. Court, Special Counsel, and Janet Kay Jones, Attorney.

Robert H. Benna, Washington, DC, argued the cause for intervenor Tennessee Gas Pipeline Company. With him on the brief was Jeanne M. Bennett, Washington, DC. Michael J. Fremuth, Washington, DC, entered an appearance.

Bruce A. Connell, Houston, TX, Kevin M. Sweeney, Joseph D. Naylor, Wilmington, DC, John E. Dickinson, Michael L. Pate, Washington, DC, Charles J. McClees, Jr., Mickey Jo Lawrence, and Norma J. Rosner, Houston, TX, were on the brief for intervenors Indicated Shippers. J. Paul Douglas, Gastonia, NC, entered an appearance.

Before: WALD, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The two issues presented in these consolidated petitions arise from orders of the Federal Energy Regulatory Commission relating to Tennessee Gas Pipeline Company's restructuring of its service and operations to conform with Order No. 636. *See United Distribution Cos. v. FERC ("UDC"),* 88 F.3d 1105 (D.C.Cir.1996).

■ The first issue deals with a difference in the pipeline's treatment of some of its "small" customers in terms of their eligibility for "one-part" sales service, eligibility that is for a discount subsidized by other pipeline customers. The Commission's order of November 12, 1993, set a 5,300 dekatherm ("Dth/day") eligibility limit on the pipeline's former "indirect" small customers, but allocated a 10,000 Dth/day eligibility limit on Tennessee's former upstream, or "direct," small customers. *See* 65 F.E.R.C. ¶ 61,224, at 62,062–63 (1993). Petitioners East Tennessee Group and Tennessee Valley Municipal Gas Association, representing some of the

pipeline's former indirect small customers, point out that after restructuring they are in the same position as the pipeline's former "upstream" small customers; both classes are now direct customers. Their argument is that the Commission's approval of an eligibility cutoff for former upstream small customers nearly double that granted to former indirect small customers amounts to "undue discrimination" in violation of the Natural Gas Act, 15 U.S.C. §§ 717c(b), 717d(a). The Commission, of course, denies that it has discriminated. In its view, it has merely maintained the status quo. Before restructuring the eligibility limit for indirect small customers was no more than 5,300 Dth/day; for upstream small customers, the limit was 10,000 Dth/day. Maintaining these cutoffs, the Commission believes, did not result in unequal treatment. Both classes of small customers were treated the same: They were placed in the same position after restructuring as they were in before restructuring.

We had a related problem before us in *UDC.* Order No. 636–B indicated that an upstream pipeline's former indirect small customers could qualify for discounts only if they could demonstrate need in the individual restructuring proceedings, although former upstream small customers automatically received the discount. *See* 61 F.E.R.C. ¶ 61,-272, at 62,020 (1992). East Tennessee Group and Tennessee Valley Municipal Gas Association claimed that this difference in treatment amounted to "undue discrimination" against them. We held that the Commission had failed to justify this seemingly "arbitrary distinction between former indirect small customers of upstream pipelines (who are now direct small customers) and small customers who have always been direct customers of the same pipelines," and remanded the "issue to the Commission for further consideration of whether or not the small customer benefits should be made available to the former downstream small customers." *UDC,* 88 F.3d at 1175.

The Commission rendered its orders in this case before *UDC* came down. In the ordinary course, we would consider vacating and remanding for reconsideration in light of our intervening decision. Although there are differences between the issue in *UDC* and the issue in this case, other developments convince us that the proper course is to send the case back. Proceedings on remand from *UDC* are well underway. In Order No. 636–C, the Commission reaffirmed its decision to determine on a case-by-case basis the limits on former indirect small customers' eligibility for the upstream pipeline's small-customer rate. *See* 78 F.E.R.C. ¶ 61,186, at 61,776–78 (1997). To demonstrate why it was appropriate to proceed in this manner, the Commission discussed its orders in Tennessee's restructuring proceeding—this case—setting different eligibility limits for former indirect small customers and former upstream small customers. *See id.* at 61,778. East Tennessee and Tennessee Valley Municipal Gas Association sought rehearing of Order No. 636–C. Their rehearing petition makes arguments identical to those in their brief in this case, using the same sources and at times even the same language. The rehearing petition is still pending before the Commission.

Thus, the general issue of the treatment of a pipeline's former indirect small customers under Order No. 636 has not yet been finally decided by the Commission. It would be imprudent for us to review the merits of a question still under consideration by the Commission. Accordingly we shall remand this aspect of the case to the Commission so that it may be considered in light of the outcome of the rehearing of Order No. 636–C.

■ The remaining matter before us is the challenge by JMC Power Projects to what it describes as a final agency action in the Commission's *Second Compliance Order*—a decision to price the costs of newly constructed facilities on Tennessee on an "incremental" rather than on a "rolled-in" basis. 64 F.E.R.C. ¶ 61,020, at 61,219–21 (1993). These facilities, which were constructed to serve JMC Power Projects and other Northeastern customers of Tennessee, consist of additions and replacements of pipeline looping, and new compressors and interconnections on Tennessee's integrated mainline. They have been priced on an "incremental" basis since their original certification, meaning that only those customers directly served by the facilities—customers such as JMC Power Projects—pay for costs associated with them. *See, e.g.,* 45 F.E.R.C. ¶ 61,010

(1988). In the *Second Compliance Order,* the Commission considered permitting Tennessee to switch from incremental to "rolled-in" pricing, thereby spreading the costs of the facilities across all customers of Tennessee. *See* 64 F.E.R.C. at 61,219–21.

We do not believe this challenge is ripe for review. Although the Commission considered the rolled-in pricing issue in its *Second Compliance Order,* and tentatively concluded that the evidence in the record did not justify it, the Commission expressly deferred making a final decision until the parties had the opportunity to present further evidence in Tennessee's ongoing rate case. *See id.* at 61,220–21. The Commission informed the parties that they "should further address the roll-in issue in Tennessee's ongoing rate proceeding.... There, the parties will have the opportunity to develop a record that fully explores the costs and benefits to the existing shippers...." *Id.* at 61,221. True to its word, the Commission reconsidered the issue in the rate proceeding, and determined that the evidence did not support rolled in pricing. *See Tennessee Gas Pipeline Co.,* 76 F.E.R.C. ¶ 61,022, at 61,112 (1996), *reh'g denied,* 80 F.E.R.C. ¶ 61,060 (1997). JMC Power nevertheless argues that the Commission's decision to defer the rolled-in rate issue in the *Second Compliance Order* should be treated as a final decision on the merits because it demonstrated that the Commission was applying an unlawfully stringent standard in determining whether rolled-in rates were justified. The question is not, however, whether the evidence before the Commission was sufficient to justify rolled-in rates. The question is whether the Commission made a final decision about the validity of such rates. On that score, it appears clear to us that the Commission decided only to examine the issue in the rate proceeding.

██ JMC Power also thinks that the Commission must have fully resolved the rolled-in rate issue because it required the parties to develop an "exhaustive record" in the restructuring proceeding, and because it had previously expressed its intent to decide the rolled-in rate issue in the restructuring docket. But whatever the Commission initially contemplated, it ultimately decided not to decide the issue. An agency has broad discretion to determine when and how to hear and decide the matters that come before it. *See Mobil Oil Exploration v. United Distribution Cos.,* 498 U.S. 211, 230, 111 S.Ct. 615, 627, 112 L.Ed.2d 636 (1991); *Algonquin Gas Transmission Co. v. FERC,* 948 F.2d 1305, 1314–15 (D.C.Cir.1991); *GTE Service Corp. v. FCC,* 782 F.2d 263, 273 (D.C.Cir.1986). The Commission is not barred from hearing new evidence in a rate case simply because it previously gathered evidence on that issue in the restructuring proceeding. JMC Power points to no statute or regulation preventing the Commission from deferring a final decision to the rate proceeding even though, at an earlier point, the Commission considered resolving the issue in the restructuring hearing.

\* \* \* \* \* \*

We remand the eligibility limitation placed on Tennessee's former indirect small customers for consideration in light of the Commission's rehearing of Order No. 636–C. We deny the petition to review the rate treatment of facilities on Tennessee's pipeline for lack of a final judgment on that issue.

*So ordered.*