**NEW YORK STATE ELECTRIC & GAS CORPORATION,**
Petitioner,

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**The City of Charlottesville, Virginia, et al., Intervenors.**

No. 97–1430.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 19, 1999.

Decided June 4, 1999.

Jonathan D. Schneider argued the cause for petitioner. With him on the briefs were Richard M. Lorenzo and David D'Alessandro.

Laura J. Vallance, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Jay L. Witkin, Solicitor, and Susan J. Court, Special Counsel.

Robin Nuschler argued the cause for intervenor Columbia Gas Transmission Corporation. With her on the brief was Frederic J. George.

Before: GINSBURG, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

New York State Electric & Gas Corporation ("NYSEG"), a customer of Columbia Gas Transmission Company ("Columbia"), petitions for review of two orders by the Federal Energy Regulatory Commission, allowing Columbia to build additional facilities on its pipeline system and finding that absent changed circumstances Columbia may roll-in the cost of the expansion into systemwide rates in its next rate case. *See Columbia Gas Transmission Corp.*, 78 F.E.R.C. ¶ 61,030 (1997), *reh'g denied*, 79 F.E.R.C. ¶ 61,160 (1997). Although Columbia proceeded under section 7 of the Natural Gas Act ("NGA"), 15 U.S.C. § 717f (1994), NYSEG contends that because the Commission established a presumption in favor of Columbia rolling-in the cost of its new facilities at its next section 4 rate proceeding, the Commission erred by failing to proceed under section 4. *See* 15 U.S.C. § 717c (1994). Because this appeal is not ripe for review, we dismiss NYSEG's petition without reaching the merits of its contentions.

## I.

In February 1996, Columbia filed an application under NGA section 7 to construct and expand its pipeline operations, as well as abandon certain pipelines and lease firm capacity from Texas Eastern Transmission Corporation ("Texas Eastern") at an estimated cost of $350 million.[1] Columbia further sought an "upfront determination that it may roll the costs associated with the Expansion Project into its systemwide Part 284 rates in its next rate case," rather than impose such charges "incrementally," *i.e.* solely on expansion facility customers. *See Columbia Gas*, 78 F.E.R.C. at 61,117. The Commission agreed, relying on its Pricing Policy Statement, which established a presumption in

---

1. Columbia's Expansion Project proposed the construction of over forty miles of new pipeline, the replacement of eight miles of other pipeline, the uprating of nearly 280 miles of pipeline, the addition of 45,699 horsepower of compression, the increase in capacity of 14 storage fields, the sale of 8,200 million cubic feet (MMcf) of its fixed asset base gas, and the leasing of additional capacity from Texas Eastern.

favor of rolled-in rates where the rate impact is five percent or less and the pipeline shows specific system-wide operational and financial benefits to its customers. *See id.* at 61,119; *see also* Pricing Policy for New and Existing Facilities Constructed by Interstate Natural Gas Pipelines, 71 F.E.R.C. ¶ 61,241, at 61,916–17 (1995), *reh'g denied,* 75 F.E.R.C. ¶ 61,105 (1996). Finding that Columbia's project met these criteria, the Commission determined that Columbia could "roll-in" its costs associated with the expansion project "in Columbia's next rate proceeding unless there has been a significant change from the facts and circumstances underlying this order." *Columbia Gas,* 78 F.E.R.C. at 61,124.

In rejecting NYSEG's arguments that Columbia's rate impact study was flawed and that a substantial part of its operational benefits were withdrawn, the Commission concluded that Columbia had sufficiently demonstrated that the rate impact of the Expansion Project was below the five percent threshold and that Columbia had "shown ample operational and financial benefits to its system."[2] *Id.* at 61,119. Hence, the Commission ruled, the burden of proof shifted to the objecting customer to show that the benefits of rolled-in pricing were so "insignificant" that such rates were not justified. *Id.* The Commission found that NYSEG had not met this burden, because Columbia's impact study had relied on appropriate considerations and "not all customers must benefit equally to justify rolled-in rate treatment." *Id.* It therefore preliminarily determined that Columbia could proceed with its expansion

project, subject to environmental review and issuance of a final order. *Id.* at 61,124.

On rehearing NYSEG challenged the Commission's determinations on several grounds, including that the policy statement provided an insufficient basis on which the Commission could evaluate the merits of Columbia's application, that the Commission failed to consider its precedent, that the impact determination was unsupported by record evidence and based on an inflationary scheme that encouraged uneconomic investments, that the Commission's order lacked any reasoned analysis to support the finding of benefits to existing customers and, in any event, that the claimed benefits were illusory. The Commission found NYSEG's challenges unpersuasive and also rejected NYSEG's request for an evidentiary hearing because no material fact was in dispute. 79 F.E.R.C. at 61,759. The Commission then issued certificates of convenience and necessity generally authorizing Columbia to proceed with its expansion program. *Id.* at 61,762.

In its petition for review, NYSEG contends that the Commission's presumption in favor of rolled-in rates will, in fact, control Columbia's next section 4 rate case, and therefore the Commission erred by failing to follow its usual section 4 procedures with a full evidentiary hearing.[3] It further maintains that the Commission acted arbitrarily and capriciously by placing the burden on customers to show that the system benefits were not sufficiently substantial to warrant rolled-in pricing and

**2.** The Commission found that the benefits to customers included greater storage deliverability and turnover capacity, additional facility integrity and operational flexibility with the establishment of a third high pressure pipeline system, reductions in the required base gas in the system, lowered costs associated with retained storage, and system-wide fuel savings. *Id.* at 61,118–19.

**3.** The Pricing Policy provides, in part, that:
The decision made in the certificate order will apply to the pricing of the facilities in

the first rate case after the facilities go into operation, unless the parties demonstrate that circumstances have changed significantly between the time the certificate is issued and the pipeline files the rate case. If there is no significant change in circumstance between the certificate order and the first rate case, the Commission will summarily resolve the pricing issue in the first rate case consistent with its certificate decision.
71 F.E.R.C. at 61,918.

by adopting five percent as a threshold for its presumption favoring rolled-in rates. Finally, it contends that the Commission failed to apply *Battle Creek Gas Co. v. FPC*, 281 F.2d 42, 47 (D.C.Cir.1960), and its progeny, which require the Commission when imposing rolled-in rates to identify how the new facilities are integrated into the main system and how they will benefit all the customers in the system. *See also TransCanada PipeLines Ltd. v. FERC*, 24 F.3d 305, 308 (D.C.Cir.1994). The Commission responds that the appeal is not ripe because Columbia has not yet filed a section 4 rate case, nor has the Commission actually approved rolled-in rates.

## II.

■■■ A claim is unripe for review when it rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, ——, 118 S.Ct. 1257, 1259, 140 L.Ed.2d 406 (1998) (quotation marks omitted).

> The primary focus of the ripeness doctrine as applied to judicial review of agency action "has been a prudential attempt to time review in a way that balances the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting."

*Mississippi Valley Gas Co. v. FERC*, 68 F.3d 503, 508 (D.C.Cir.1995) (quoting *Eagle-Picher Indus. v. EPA*, 759 F.2d 905, 915 (D.C.Cir.1985)). To evaluate ripeness, a court must therefore consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas*, 118 S.Ct. at 1260 (quoting *Abbott Labs. v.*

*Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)); *see also Tennessee Gas Pipeline Co. v. FERC*, 736 F.2d 747, 749 (D.C.Cir.1984). This doctrine allows courts to "postpone review of administrative action when delay would facilitate examination of the issues without causing significant hardship to the petitioner."[4] *Great Lakes Gas Transmission Ltd. Partnership v. FERC*, 984 F.2d 426, 431 (D.C.Cir.1993).

The two orders challenged by NYSEG do not actually impose rolled-in rates, and they specifically provide that the issue will be revisited at the next section 4 rate proceeding upon a showing of a significant change in circumstances. The Commission suggests that the next section 4 proceeding "may not come to pass." and that it will not occur, at a minimum, before February 1, 2000, as a result of an agreement settling Columbia's prior section 4 rate case. *See Columbia Gas Transmission Corp.*, 79 F.E.R.C. ¶ 61,044, at 61,201 (1997). NYSEG responds that rate cases, like "death and taxes," are an inevitable fact of life. As to inevitability, NYSEG may have the better of the argument, but its effort to obtain review now ultimately fails as a matter of law.

Although NYSEG views these orders to establish a presumption that will control Columbia's next case, it does not deny that it will have the opportunity to appeal the rolled-in rates if the Commission fails to follow the requirements of section 4, including the requirement that Columbia bear the burden of proving that rolled-in rates are "just and reasonable." *See* 15 U.S.C. § 717c. As in *Tennessee Valley Mun. Gas Ass'n v. FERC*, 140 F.3d 1085 (D.C.Cir.1998), where the court held that the petitioner's challenge was unripe because the Commission had only "tentatively concluded that the evidence in the rec-

4. Because the petition is unripe, we do not reach the Commission's alternative argument that NYSEG is not aggrieved under the NGA, *see* 15 U.S.C. § 717r(b) (1994), or under Article III, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119

L.Ed.2d 351 (1992); *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1200–01 (D.C.Cir.1995). The hardship inquiry under ripeness review, however, "overlaps with the 'injury in fact' facet of standing doctrine." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C.Cir.1997).

ord did not justify" rolled-in pricing and had deferred "making a final decision until the parties had the opportunity to present further evidence in Tennessee's ongoing rate case," *id.* at 1088, so too here there is no final agency decision on rolled-in rates that will govern future proceedings. *See Mississippi Valley,* 68 F.3d at 506. Although the Commission has indicated its predisposition to allow Columbia to roll-in the costs of its expansion program at its next section 4 rate proceeding, it remains for Columbia to file for new rates and, in that event, to show that such rates are just and reasonable. Under the Commission's challenged orders, opponents of rolled-in rates could still show that changed circumstances necessitate reexamination of the question, and NYSEG can challenge the presumption created by the Pricing Policy Statement as well as what it views as the Commission's improper placement of a burden on it to demonstrate changed circumstances. In any event, even assuming that NYSEG's rates will assuredly increase, its challenges are presently unfit for judicial resolution because it is unclear just how the Commission will apply the policy statement in a future section 4 proceeding. *See Clean Air Implementation Project v. EPA,* 150 F.3d 1200, 1205 (D.C.Cir.1998).

NYSEG nonetheless contends that it suffers current hardship and injury as a result of the orders because it is paying rates resulting from "the cost of Columbia's payments to Texas Eastern through the Transmission Cost Recovery Adjustment ("TCRA")." NYSEG points to the Commission's statement that "[Columbia] *intends* to account for the costs associated with the lease as operational Account 858 costs. It *proposes* to recover these costs pursuant to its tariff's [TCRA] mechanism." *Columbia Gas,* 78 F.E.R.C. at 61,-110 (emphasis added). In fact, the costs contested were approved in other orders. NYSEG admits that "[c]urrent recovery was agreed to in the settlement of Columbia's previous rate case [under section 4], subject to litigation of the case here on appeal." Reply Br. at 3 n.5; *see also*

*Columbia Gas,* 79 F.E.R.C. ¶ 61,044. Indeed, a 1998 Commission order attached to NYSEG's reply brief provides that "[i]n accordance with the Commission's May 14, 1997 order in Docket No. CP96–213 [the second order here on appeal], authorizing the lease, Columbia is including $7,245,180 in its Current Operational TCRA Rate associated with the [Texas Eastern] lease agreement." Letter Order from the Office of Pipeline Regulation, to Columbia Gas Transmission Corp., No. RP99–12–000, at 1 (Oct. 27, 1998). That letter order explains that a stipulation approved in the settlement agreement "allows Columbia to include and collect the subject lease payments in and through its TCRA mechanism contingent upon the approval of the lease agreement in Columbia's Docket No. CP 96–213 (Market Expansion Application)." *Id.* The order approving the settlement agreement is not challenged in NYSEG's petition, as counsel for NYSEG acknowledged during oral argument. Moreover, counsel for NYSEG acknowledged at oral argument that under the settlement it is entitled to receive a refund if the court or the ·Commission disapproves rolled-in rates. Of course, NYSEG's failure to seek review of the orders approving the settlement and the imposition of the TCRA costs bars us from reviewing those orders. *See* 15 U.S.C. § 717r(b) (1994); *Process Gas Consumers Group v. FERC,* 912 F.2d 511, 514 (D.C.Cir.1990). Furthermore, the refund provision would appear to mitigate any potential injury, which the court may consider in evaluating the hardship NYSEG may face. *Cf. Papago Tribal Util. Auth. v. FERC,* 628 F.2d 235, 240 (D.C.Cir. 1980). But in any event, the two orders that NYSEG challenges in its current petition do not impose the costs creating the alleged hardship.

Accordingly, because the Commission has not rendered a final order approving Columbia's request for rolled-in rates, *see id.* at 239, we dismiss NYSEG's petition as unripe and do not reach the merits of its contentions. Even if it is virtually inevit-

able that Columbia will request rolled-in rates at its next section 4 proceeding, it is not inevitable that the Commission will approve such rates. NYSEG has not demonstrated that it suffered current hardship as a result of the orders under appeal, *see Mississippi Valley*, 68 F.3d at 508, and to the extent the Commission's orders bind Columbia's next section 4 rate proceeding, NYSEG can seek review at that time.