United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 19, 1999 Decided June 4, 1999 

 No. 97-1430

 New York State Electric & Gas Corporation, Petitioner

 v.

 Federal Energy Regulatory Commission, 
 Respondent

 The City of Charlottesville, Virginia, et al., 
 Intervenors

 On Petition for Review of Orders of the 
 Federal Energy Regulatory Commission

 Jonathan D. Schneider argued the cause for petitioner. 
With him on the briefs were Richard M. Lorenzo and David 
D'Alessandro.

 Laura J. Vallance, Attorney, Federal Energy Regulatory 
Commission, argued the cause for respondent. With her on 

the brief were Jay L. Witkin, Solicitor, and Susan J. Court, 
Special Counsel.

 Robin Nuschler argued the cause for intervenor Columbia 
Gas Transmission Corporation. With her on the brief was 
Frederic J. George.

 Before: Ginsburg, Randolph and Rogers, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Rogers.

 Rogers, Circuit Judge: New York State Electric & Gas 
Corporation ("NYSEG"), a customer of Columbia Gas Trans-
mission Company ("Columbia"), petitions for review of two 
orders by the Federal Energy Regulatory Commission, allow-
ing Columbia to build additional facilities on its pipeline 
system and finding that absent changed circumstances Co-
lumbia may roll-in the cost of the expansion into systemwide 
rates in its next rate case. See Columbia Gas Transmission 
Corp., 78 F.E.R.C. p 61,030 (1997), reh'g denied, 79 F.E.R.C. 
p 61,160 (1997). Although Columbia proceeded under section 
7 of the Natural Gas Act ("NGA"), 15 U.S.C. s 717f (1994), 
NYSEG contends that because the Commission established a 
presumption in favor of Columbia rolling-in the cost of its new 
facilities at its next section 4 rate proceeding, the Commission 
erred by failing to proceed under section 4. See 15 U.S.C. 
s 717c (1994). Because this appeal is not ripe for review, we 
dismiss NYSEG's petition without reaching the merits of its 
contentions.

 I.

 In February 1996, Columbia filed an application under 
NGA section 7 to construct and expand its pipeline opera-
tions, as well as abandon certain pipelines and lease firm 
capacity from Texas Eastern Transmission Corporation 
("Texas Eastern") at an estimated cost of $350 million.1 

__________
 1 Columbia's Expansion Project proposed the construction of 
over forty miles of new pipeline, the replacement of eight miles of 
other pipeline, the uprating of nearly 280 miles of pipeline, the 
addition of 45,699 horsepower of compression, the increase in 
capacity of 14 storage fields, the sale of 8,200 million cubic feet 

Columbia further sought an "upfront determination that it 
may roll the costs associated with the Expansion Project into 
its systemwide Part 284 rates in its next rate case," rather 
than impose such charges "incrementally," i.e. solely on ex-
pansion facility customers. See Columbia 
Gas, 78 F.E.R.C. at 61,117. The Commission agreed, relying 
on its Pricing Policy Statement, which established a presump-
tion in favor of rolled-in rates where the rate impact is five 
percent or less and the pipeline shows specific system-wide 
operational and financial benefits to its customers. See id. at 
61,119; see also Pricing Policy for New and Existing Facili-
ties Constructed by Interstate Natural Gas Pipelines, 71 
F.E.R.C. p 61,241, at 61,916-17 (1995), reh'g denied, 75 
F.E.R.C. p 61,105 (1996). Finding that Columbia's project 
met these criteria, the Commission determined that Columbia 
could "roll-in" its costs associated with the expansion project 
"in Columbia's next rate proceeding unless there has been a 
significant change from the facts and circumstances underly-
ing this order." Columbia Gas, 78 F.E.R.C. at 61,124.

 In rejecting NYSEG's arguments that Columbia's rate 
impact study was flawed and that a substantial part of its 
operational benefits were withdrawn, the Commission con-
cluded that Columbia had sufficiently demonstrated that the 
rate impact of the Expansion Project was below the five 
percent threshold and that Columbia had "shown ample oper-
ational and financial benefits to its system."2 Id. at 61,119. 
Hence, the Commission ruled, the burden of proof shifted to 
the objecting customer to show that the benefits of rolled-in 
pricing were so "insignificant" that such rates were not 

__________
(MMcf) of its fixed asset base gas, and the leasing of additional 
capacity from Texas Eastern.

 2 The Commission found that the benefits to customers includ-
ed greater storage deliverability and turnover capacity, additional 
facility integrity and operational flexibility with the establishment of 
a third high pressure pipeline system, reductions in the required 
base gas in the system, lowered costs associated with retained 
storage, and system-wide fuel savings. Id. at 61,118-19.

justified. Id. The Commission found that NYSEG had not 
met this burden, because Columbia's impact study had relied 
on appropriate considerations and "not all customers must 
benefit equally to justify rolled-in rate treatment." Id. It 
therefore preliminarily determined that Columbia could pro-
ceed with its expansion project, subject to environmental 
review and issuance of a final order. Id. at 61,124.

 On rehearing NYSEG challenged the Commission's deter-
minations on several grounds, including that the policy state-
ment provided an insufficient basis on which the Commission 
could evaluate the merits of Columbia's application, that the 
Commission failed to consider its precedent, that the impact 
determination was unsupported by record evidence and based 
on an inflationary scheme that encouraged uneconomic invest-
ments, that the Commission's order lacked any reasoned 
analysis to support the finding of benefits to existing custom-
ers and, in any event, that the claimed benefits were illusory. 
The Commission found NYSEG's challenges unpersuasive 
and also rejected NYSEG's request for an evidentiary hear-
ing because no material fact was in dispute. 79 F.E.R.C. 
at 61,759. The Commission then issued cer-
tificates of convenience and necessity generally authorizing 
Columbia to proceed with its expansion program. Id. at 
61,762.

 In its petition for review, NYSEG contends that the Com-
mission's presumption in favor of rolled-in rates will, in fact, 
control Columbia's next section 4 rate case, and therefore the 
Commission erred by failing to follow its usual section 4 
procedures with a full evidentiary hearing.3 It further main-

__________
 3 The Pricing Policy provides, in part, that:

 The decision made in the certificate order will apply to the 
 pricing of the facilities in the first rate case after the facilities 
 go into operation, unless the parties demonstrate that circum-
 stances have changed significantly between the time the certifi-
 cate is issued and the pipeline files the rate case. If there is no 
 significant change in circumstance between the certificate or-
 der and the first rate case, the Commission will summarily 
 
tains that the Commission acted arbitrarily and capriciously 
by placing the burden on customers to show that the system 
benefits were not sufficiently substantial to warrant rolled-in 
pricing and by adopting five percent as a threshold for its 
presumption favoring rolled-in rates. Finally, it contends 
that the Commission failed to apply Battle Creek Gas Co. v. 
FPC, 281 F.2d 42, 47 (D.C. Cir. 1960), and its progeny, which 
require the Commission when imposing rolled-in rates to 
identify how the new facilities are integrated into the main 
system and how they will benefit all the customers in the 
system. See also TransCanada Pipelines Ltd. v. FERC, 24 
F.3d 305, 308 (D.C. Cir. 1994). The Commission responds 
that the appeal is not ripe because Columbia has not yet filed 
a section 4 rate case, nor has the Commission actually ap-
proved rolled-in rates.

 II.

 A claim is unripe for review when it rests "upon contingent 
future events that may not occur as anticipated, or indeed 
may not occur at all." Texas v. United States, 523 U.S. 296, 
___, 118 S. Ct. 1257, 1259 (1998) (quotation marks omitted).

 The primary focus of the ripeness doctrine as applied to 
 judicial review of agency action "has been a prudential 
 attempt to time review in a way that balances the 
 petitioner's interest in prompt consideration of allegedly 
 unlawful agency action against the agency's interest in 
 crystallizing its policy before that policy is subjected to 
 judicial review and the court's interests in avoiding un-
 necessary adjudication and in deciding issues in a con-
 crete setting."
 
Mississippi Valley Gas Co. v. FERC, 68 F.3d 503, 508 (D.C. 
Cir. 1995) (quoting Eagle-Picher Indus. v. EPA, 759 F.2d 905, 
915 (D.C. Cir. 1985)). To evaluate ripeness, a court must 
therefore consider "both the fitness of the issues for judicial 

__________
 resolve the pricing issue in the first rate case consistent with 
 its certificate decision.
 
71 F.E.R.C. at 61,918.

decision and the hardship to the parties of withholding court 
consideration." Texas, 118 S. Ct. at 1260 (quoting Abbott 
Labs. v. Gardner, 387 U.S. 136, 149 (1967)); see also Tennes-
see Gas Pipeline Co. v. FERC, 736 F.2d 747, 749 (D.C. Cir. 
1984). This doctrine allows courts to "postpone review of 
administrative action when delay would facilitate examination 
of the issues without causing significant hardship to the 
petitioner."4 Great Lakes Gas Transmission Ltd. Partner-
ship v. FERC, 984 F.2d 426, 431 (D.C. Cir. 1993).

 The two orders challenged by NYSEG do not actually 
impose rolled-in rates, and they specifically provide that the 
issue will be revisited at the next section 4 rate proceeding 
upon a showing of a significant change in circumstances. The 
Commission suggests that the next section 4 proceeding "may 
not come to pass" and that it will not occur, at a minimum, 
before February 1, 2000, as a result of an agreement settling 
Columbia's prior section 4 rate case. See Columbia Gas 
Transmission Corp., 79 F.E.R.C. p 61,044, at 61,201 (1997). 
NYSEG responds that rate cases, like "death and taxes," are 
an inevitable fact of life. As to inevitability, NYSEG may 
have the better of the argument, but its effort to obtain 
review now ultimately fails as a matter of law.

 Although NYSEG views these orders to establish a pre-
sumption that will control Columbia's next case, it does not 
deny that it will have the opportunity to appeal the rolled-in 
rates if the Commission fails to follow the requirements of 
section 4, including the requirement that Columbia bear the 
burden of proving that rolled-in rates are "just and reason-
able." See 15 U.S.C. s 717c. As in Tennessee Valley Mun. 
Gas Ass'n v. FERC, 140 F.3d 1085 (D.C. Cir. 1998), where the 

__________
 4 Because the petition is unripe, we do not reach the Commis-
sion's alternative argument that NYSEG is not aggrieved under the 
NGA, see 15 U.S.C. s 717r(b) (1994), or under Article III, see 
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Shell 
Oil Co. v. FERC, 47 F.3d 1186, 1200-01 (D.C. Cir. 1995). The 
hardship inquiry under ripeness review, however, "overlaps with the 
'injury in fact' facet of standing doctrine." Navegar, Inc. v. United 
States, 103 F.3d 994, 998 (D.C. Cir. 1997).

court held that the petitioner's challenge was unripe because 
the Commission had only "tentatively concluded that the 
evidence in the record did not justify" rolled-in pricing and 
had deferred "making a final decision until the parties had 
the opportunity to present further evidence in Tennessee's 
ongoing rate case," id. at 1088, so too here there is no final 
agency decision on rolled-in rates that will govern future 
proceedings. See Mississippi Valley, 68 F.3d at 506. Al-
though the Commission has indicated its predisposition to 
allow Columbia to roll-in the costs of its expansion program at 
its next section 4 rate proceeding, it remains for Columbia to 
file for new rates and, in that event, to show that such rates 
are just and reasonable. Under the Commission's challenged 
orders, opponents of rolled-in rates could still show that 
changed circumstances necessitate reexamination of the ques-
tion, and NYSEG can challenge the presumption created by 
the Pricing Policy Statement as well as what it views as the 
Commission's improper placement of a burden on it to dem-
onstrate changed circumstances. In any event, even assum-
ing that NYSEG's rates will assuredly increase, its challenges 
are presently unfit for judicial resolution because it is unclear 
just how the Commission will apply the policy statement in a 
future section 4 proceeding. See Clean Air Implementation 
Project v. EPA, 150 F.3d 1200, 1205 (D.C. Cir. 1998).

 NYSEG nonetheless contends that it suffers current hard-
ship and injury as a result of the orders because it is paying 
rates resulting from "the cost of Columbia's payments to 
Texas Eastern through the Transmission Cost Recovery Ad-
justment ("TCRA")." NYSEG points to the Commission's 
statement that "[Columbia] intends to account for the costs 
associated with the lease as operational Account 858 costs. It 
proposes to recover these costs pursuant to its tariff's 
[TCRA] mechanism." Columbia Gas, 78 F.E.R.C. at 61,110 
(emphasis added). In fact, the costs contested were approved 
in other orders. NYSEG admits that "[c]urrent recovery was 
agreed to in the settlement of Columbia's previous rate case 
[under section 4], subject to litigation of the case here on 
appeal." Reply Br. at 3 n.5; see also Columbia Gas, 79 

F.E.R.C. p 61,044. Indeed, a 1998 Commission order at-
tached to NYSEG's reply brief provides that "[i]n accordance 
with the Commission's May 14, 1997 order in Docket No. 
CP96-213 [the second order here on appeal], authorizing the 
lease, Columbia is including $7,245,180 in its Current Opera-
tional TCRA Rate associated with the [Texas Eastern] lease 
agreement." Letter Order from the Office of Pipeline Regu-
lation, to Columbia Gas Transmission Corp., No. RP99-12-
000, at 1 (Oct. 27, 1998). That letter order explains that a 
stipulation approved in the settlement agreement "allows 
Columbia to include and collect the subject lease payments in 
and through its TCRA mechanism contingent upon the ap-
proval of the lease agreement in Columbia's Docket No. CP 
96-213 (Market Expansion Application)." Id. The order ap-
proving the settlement agreement is not challenged in NY-
SEG's petition, as counsel for NYSEG acknowledged during 
oral argument. Moreover, counsel for NYSEG acknowledged 
at oral argument that under the settlement it is entitled to 
receive a refund if the court or the Commission disapproves 
rolled-in rates. Of course, NYSEG's failure to seek review of 
the orders approving the settlement and the imposition of the 
TCRA costs bars us from reviewing those orders. See 15 
U.S.C. s 717r(b) (1994); Process Gas Consumers Group v. 
FERC, 912 F.2d 511, 514 (D.C. Cir. 1990). Furthermore, the 
refund provision would appear to mitigate any potential inju-
ry, which the court may consider in evaluating the hardship 
NYSEG may face. Cf. Papago Tribal Util. Auth. v. FERC, 
628 F.2d 235, 240 (D.C. Cir. 1980). But in any event, the two 
orders that NYSEG challenges in its current petition do not 
impose the costs creating the alleged hardship.

 Accordingly, because the Commission has not rendered a 
final order approving Columbia's request for rolled-in rates, 
see id. at 239, we dismiss NYSEG's petition as unripe and do 
not reach the merits of its contentions. Even if it is virtually 
inevitable that Columbia will request rolled-in rates at its 
next section 4 proceeding, it is not inevitable that the Com-
mission will approve such rates. NYSEG has not demon-
strated that it suffered current hardship as a result of the 
orders under appeal, see Mississippi Valley, 68 F.3d at 508, 

and to the extent the Commission's orders bind Columbia's 
next section 4 rate proceeding, NYSEG can seek review at 
that time.