**MISSISSIPPI VALLEY GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Southern Natural Gas Company, et al., Intervenors.**

No. 94–1486.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1995.

Decided Oct. 20, 1995.

J. Michel Marcoux, Washington, DC, argued the cause and filed the briefs for petitioner.

Katherine Waldbauer, Federal Energy Regulatory Commission, argued the cause for respondent, with whom Jerome M. Feit, Solicitor, and Joseph S. Davies, Deputy Solicitor, Federal Energy Regulatory Commission, Washington, DC, were on the briefs. Jill L. Hall, Federal Energy Regulatory Commission, entered an appearance.

Patrick B. Pope, Deborah L. Dille, Birmingham, AL, and James J. Flood, Jr., Washington, DC, were on the brief for intervenor Southern Natural Gas Company.

Edward J. Grenier, Jr., Washington, DC, entered an appearance for intervenor Georgia Industrial Group. Joel F. Zipp and Paul W. Diehl, Washington, DC, entered appearances for intervenor South Carolina Pipeline Corporation. James W. McTarnaghan and Jeffrey D. Komarow, Washington, DC, entered appearances for intervenor Alabama Gas Corporation. John T. Stough, Jr. and Kevin M. Downey, Washington, DC, entered appearances for intervenors Atlanta Gas Light Company and Chattanooga Gas Company. James R. Choukas–Bradley, Washington, DC, entered an appearance for intervenors Municipal Gas Authority of Georgia, et al. Michael R. Waller, Washington, DC, entered an appearance for intervenor Florida Power Corporation. Frederic G. Berner, Jr. and Nancy Y. Gorman, Washington, DC, entered appearances for intervenor Arcadian Fertilizer, L.P.

Before: EDWARDS, Chief Judge, SENTELLE and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

In December 1993, the Federal Energy Regulatory Commission ("FERC") approved settlement agreements in several ratemaking cases involving gas transportation rates charged by Southern Natural Gas Company

("Southern") for the period from September 1989 through April 1993. *Southern Natural Gas Co.*, 65 F.E.R.C. ¶ 61,348 (1993); *Southern Natural Gas Co.*, 65 F.E.R.C. ¶ 61,347 (1993). The settlement agreements provide that rates for part of that period may be determined based on the estimated gas transported (the "throughput"), reduced to reflect gas transported at discounted rates. 65 F.E.R.C. ¶ 61,348 at 62,840; 65 F.E.R.C. ¶ 61,347 at 62,827.

Mississippi Valley Gas Company ("MVGC"), a Southern customer, opposed the settlement agreements, and asked FERC to reconsider them in light of the harmful effect of rate discounts and related throughput reductions on captive customers (such as MVGC), who must use gas and can only obtain it from one provider.[1] According to MVGC, discounts granted by Southern to meet competition from other gas pipelines ("gas-on-gas" competition) are inevitably unfair to captive customers and, thus, are both illegal under the Natural Gas Act[2] and inconsistent with FERC regulations and orders. FERC reviewed the settlement agreements and granted additional hearings with respect to some of MVGC's complaints, but dismissed its claim that Southern's throughput reduction for gas-on-gas discounts discriminates against captive customers. *Southern Natural Gas Co.*, 67 F.E.R.C. ¶ 61,156 (1994); *Southern Natural Gas Co.*, 67 F.E.R.C. ¶ 61,155 (1994).

MVGC promptly petitioned for review, initiating the instant action. Although MVGC undoubtedly was prudent in seeking judicial review, we find that review at this time would be premature, because MVGC may eventually obtain the relief it seeks in the course of the hearings still pending before FERC. Therefore, we dismiss MVGC's ap-

peal as unripe, with the understanding that, if the pending FERC hearings do not grant MVGC full relief from the rate increases attributable to throughput reduction for gas-on-gas discounts, MVGC may challenge Southern's throughput reduction once the final rates have been established by FERC.

## I. BACKGROUND

Between August 1989 and February 1992, Southern filed three proposed rate revisions (RP89–224, RP90–139, and RP92–134) with FERC to set its gas transportation rates for the period from September 1, 1989 through April 30, 1993. MVGC and other Southern customers contested the proposed changes, and FERC thereafter held hearings on the challenged rates.

On April 30, 1993, after FERC had received several volumes of testimony, but had not yet issued final orders in Southern's rate cases, Southern proposed a settlement of the RP92–134 case. On June 4, 1993, an Administrative Law Judge ("ALJ") certified that FERC could accept the settlement because the parties in opposition had raised no genuine issues of material fact to support their claims. *Southern Natural Gas Co.*, 63 F.E.R.C. ¶ 63,012 (1993). Southern then proposed a settlement of the RP89–224 and RP90–139 rate cases, and an ALJ certified that FERC could accept this settlement as well.

In December 1993, FERC issued two companion orders addressing Southern's settlement proposals, *Southern Natural Gas Co.*, 65 F.E.R.C. ¶ 61,348 (1993), and *Southern Natural Gas Co.*, 65 F.E.R.C. ¶ 61,347 (1993). These orders approved modified versions of Southern's settlement proposals, subject to the outcome of evidentiary hearings at which

---

**1.** FERC does not dispute that for the period at issue in this case, MVGC was a captive customer of Southern.

**2.** Natural Gas Act § 4, 15 U.S.C. § 717c (1994), provides:

 (a) **Just and reasonable rates and charges**
 All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges,

shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.
 (b) **Undue preferences and unreasonable rates and charges prohibited**
 No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission ... make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage. ...

MVGC would have the opportunity to cross-examine Southern's witnesses on certain issues, including the question of whether Southern had improperly granted discounts to affiliated companies.[3] 65 F.E.R.C. ¶ 61,-348 at 62,839; 65 F.E.R.C. ¶ 61,347 at 62,-833–34.

Although these orders gave MVGC the possibility of relief on some issues, other concerns presented by MVGC were dismissed, including MVGC's assertion that reduction of Southern's throughput for gas-on-gas discounts was unfair and discriminatory. *See* 65 F.E.R.C. ¶ 61,347 at 62,830 (FERC rejected MVGC's contention that throughput reduction to reflect discounts is improper because it found the claim raised no issue of material fact and was "contrary to Commission policy."); 65 F.E.R.C. ¶ 61,348 at 62,843 (same). MVGC petitioned for review in this court after FERC denied its request for reconsideration of the throughput reduction issue in two companion orders issued in May 1994. *Southern Natural Gas Co.*, 67 F.E.R.C. ¶ 61,156 (1994); *Southern Natural Gas Co.*, 67 F.E.R.C. ¶ 61,155 (1994).

## II. DISCUSSION

MVGC's complaint that Southern's gas transportation rates under the settlement agreements will be unfair and discriminatory is an attack on an aspect of FERC's practice of permitting gas pipelines to provide discounts to certain customers in order to meet competition. The practice of so-called *selective discounting* was first permitted by FERC in 1985. *See Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol*, Order No. 436, 50 Fed.Reg. 42,408, 42,-451 (1985). Under current FERC regulations, a pipeline may implement selective discounting by declaring "a maximum rate and a minimum rate" and charging any non-affiliated customer "any rate that is neither greater than the maximum rate nor less than the minimum rate on file" with FERC. 18 C.F.R. § 284.7(d)(5) (1995). This court has reviewed these regulations, and has upheld FERC's authority to permit discounting to meet competition, with the caveat that such permission does not mean that FERC "is free to uphold every price distinction based on different demand elasticities." *Associated Gas Distribs. v. FERC*, 824 F.2d 981, 1011 (D.C.Cir.1987), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1468, 1469, 99 L.Ed.2d 698 (1988).

MVGC contends that discounts to meet gas-on-gas competition are precisely the type of discount that this court would disapprove of under *Associated Gas*. However, our review of that decision does not lead us to conclude that this court has specifically addressed the legality of gas-on-gas discounts. *Associated Gas* reviews the general practice of discounting to meet competition and notes that "judicial acceptance of such price differentials is longstanding," but reserves consideration of the possible discriminatory effect of "rate differentials based exclusively on competition between transporters with similar cost functions," stating that FERC "may properly defer its ultimate resolution of these issues to another day and another proceeding." *Id.* at 1011, 1012. The FERC orders at issue in this case seem to make it clear that the agency has decided to allow selective discounting to meet gas-on-gas competition. However, because we have determined to dismiss MVGC's petition for review on the ground of ripeness, we defer judgment on MVGC's argument that such a policy is illegally discriminatory.

### A. Ripeness

Under Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b) (1994), any party "aggrieved" by a FERC order may obtain judicial review of that order. In addition, a petitioner "must satisfy the requirements of constitutional standing." *El Paso Natural Gas Co. v. FERC*, 50 F.3d 23, 26 (D.C.Cir. 1995). Both of these thresholds require that MVGC establish "injury in fact" to a protected interest. *Id.* (citing *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1200 (D.C.Cir.1995)). A protected interest is one that is "arguably within the zone of interests to be protected or regulated by FERC under" the applicable

---

**3.** These hearings have recently been held in abeyance pending FERC's review of a settlement proposal filed by Southern to resolve these and other rate cases. *Southern Natural Gas Co.*, 70 F.E.R.C. ¶ 61,340 (1995).

statute. *Moreau v. FERC,* 982 F.2d 556, 564 (D.C.Cir.1993) (internal quotations and alteration omitted). Here, MVGC's standing to petition for review of the FERC orders is uncontested. MVGC has clearly demonstrated "injury in fact" because the FERC orders it challenges affect the rates it will pay Southern, and are directly within the authority conferred upon FERC by the Natural Gas Act. MVGC also meets the remaining criterion for Article III standing because it is likely that its alleged injury could be redressed by a favorable decision from this court. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992).

In addition to MVGC's standing, we have been asked by the Commission to consider whether MVGC's petition for review is ripe for this court's consideration. The primary focus of the ripeness doctrine as applied to judicial review of agency action

> has been a prudential attempt to time review in a way that balances the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting.

*Eagle–Picher Indus. v. EPA,* 759 F.2d 905, 915 (D.C.Cir.1985). Under *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), when an agency challenges the ripeness of a petition for review, we assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515.

Under the fitness prong of *Abbott Laboratories,* we are to consider the nature of the challenged issue and inquire whether the agency action is sufficiently final for review. *See id.* When a petitioner "raises a purely legal question," we assume that issue is suitable for judicial review. *Eagle–Picher,* 759 F.2d at 915. However, our assessment of the finality of the agency action also includes consideration of "whether the agency or the court will benefit from deferring review until the agency's policies have crystal-

lized and the question arises in some more concrete and final form." *Id.* (internal quotation omitted); *see also Better Gov't Ass'n v. Department of State,* 780 F.2d 86, 92 (D.C.Cir.1986).

MVGC's challenge is a petition for review of FERC's determination of the legality of ratemaking based on reduction of throughput to reflect gas-on-gas discounts. The orders clearly manifest FERC's acceptance of gas-on-gas discounts and related throughput reduction, and entirely reject MVGC's challenge to such a policy. *See* 67 F.E.R.C. ¶ 61,155 at 61,456 (FERC declared that "to the extent that Southern's discounts are shown to have been required to meet competition, they cannot have been unduly discriminatory" and "[a] discount given in order to meet competition is, by definition, required in order to maximize throughput."); *see also* 65 F.E.R.C. ¶ 61,347 at 62,833 (FERC rejected MVGC's challenge to Southern's throughput reduction.). Thus, MVGC's petition raises a question of pure law, "the understanding of which neither requires nor is facilitated by further factual development." *Better Gov't,* 780 F.2d at 92. We therefore presume that MVGC's petition is ripe for review.

Another concern, however, is that FERC has asked us to defer judgment on the issue raised by MVGC because, in the agency's view, there is still more to be done in connection with the matters now before the court. We are somewhat skeptical of this overture because, normally, where an "agency has stated that the action in question *governs and will continue to govern* its decisions, such action must be viewed as final." *Better Gov't,* 780 F.2d at 93; *see also Abbott Laboratories,* 387 U.S. at 149–50, 87 S.Ct. at 1515–16. Although it is doubtful that FERC will revisit the throughput reduction issue in the pending hearings, *see, e.g.,* 65 F.E.R.C. ¶ 61,348 at 62,843 (stating that MVGC's issues with throughput reduction to reflect discounts "shall not be considered in the remanded proceeding"), FERC nonetheless asks that we refrain from considering MVGC's challenge to the throughput reduction issue at this stage, when the parties are not sure of its practical effect.

Although it is by no means an easy decision, we find that the circumstances of this case indicate that the issue presented by MVGC is not fit for review at this time. Our decision takes into account the fact that FERC perceives a benefit in such a delay, and the possibility that MVGC will obtain relief from the effect of the FERC orders in the pending hearings. We also note that the future impact of the FERC orders is uncertain at present, and will likely be more clear once Southern's actual rates for the period in question have been finalized. The possible benefit to both FERC and this court counsels in favor of a delay in review of the FERC orders.

 Therefore, we will declare MVGC's petition unripe unless we find, under the hardship prong of *Abbott Laboratories*,[4] that the "immediate and practical impact" of the FERC orders upon MVGC "outweighs the competing institutional interests in deferring review." *Eagle–Picher*, 759 F.2d at 915 (internal quotation omitted); *see also Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 240 (D.C.Cir.) ("Only when parties face the prospect of irreparable injury, with no practical means of procuring effective relief after the close of the proceeding, might they be entitled to immediate review of" an agency order that is not otherwise ripe for review.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980). Because MVGC's petition concerns rates for a past rate period, the FERC orders do not currently impact MVGC. MVGC will be able to obtain relief from their impact in its eventual challenge to Southern's final rates, should it decide to bring one. Mere delay in obtaining relief from the past rates does not suffice to establish that the FERC orders have an immediate impact on MVGC. *See Transcontinental Gas Pipe Line Corp. v. FERC*, 866 F.2d 477, 481 (D.C.Cir.1989) (The court found no irreparable injury to justify immediate judicial review in the absence of any indication that petitioner's interests would be "inadequately protected by judicial review following an adverse determination."). Thus, we do not find that the hardship MVGC might suffer from a delay in review of its petition outweighs the institutional concerns in deferring review until after the pending FERC hearings have been completed. *See Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967) (The Court denied immediate review of an agency regulation where the impact was not felt "immediately" in "day-to-day affairs" and there were "no irremediable adverse consequences" from delaying review.); *Better Gov't*, 780 F.2d at 93 (The court found "direct and immediate" impact from agency action where the primary conduct of petitioners was immediately affected.).

Upon balancing the considerations set forth in *Abbott Laboratories*, we dismiss MVGC's petition as unripe. Provided MVGC is still aggrieved by FERC's throughput reduction policy as applied to the rates at issue in this case, MVGC may petition this court for a review of FERC's actions when the ratemaking is finalized, and this court shall then have jurisdiction to review the entire proceeding, including FERC's consideration of the throughput reduction issue. Whether MVGC will have standing if the remaining FERC proceedings alleviate the entire economic impact of Southern's throughput reduction for the period in question is not certain. It is possible that even if MVGC ultimately suffers no direct harm from the FERC orders, MVGC will still have standing to bring a facial challenge to the FERC orders because MVGC will continue to be aggrieved in future ratemaking by the throughput reduction policy they establish. *See, e.g., City of Houston v. HUD*, 24 F.3d 1421, 1428 (D.C.Cir.1994) ("It is well-established that if a plaintiff challenges both a specific agency action and the *policy* that underlies that action, the challenge to the policy is not necessarily mooted merely be-

---

4. In *City of Houston v. HUD*, 24 F.3d 1421, 1431 n. 9 (D.C.Cir.1994), we noted that:

Under the ripeness doctrine, the "hardship" prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency. *Payne Enters. v. United States*, 837 F.2d 486, 493 (D.C.Cir.1988).

Thus, where there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong. *See, e.g., Consolidated Rail Corp. v. United States*, 896 F.2d 574, 577 (D.C.Cir.1990). Where, as in this case, there are strong interests militating in favor of postponement, we must weigh the potential hardship of delay on the appellant.

cause the challenge to the particular agency action is moot."); *Better Gov't,* 780 F.2d at 91–92 (The court found a facial challenge to agency action was not moot even though immediate harm from the action had been alleviated by subsequent agency action.). However, we need not resolve this question of standing at the present time.

### B. Prudent Case Processing

The ripeness issue poses a very close question in this case, and the result that we have reached does not come easily. We also acknowledge that MVGC faced a terrible dilemma in having to decide when to seek review of the FERC orders. If MVGC had not filed the instant petition (on the assumption that review would still be available upon completion of all related proceedings before FERC), it faced the risk that the claim would be deemed time-barred and therefore dismissed. *See Eagle–Picher,* 759 F.2d at 909 ("[P]etitioners who delay filing requests for review on their own assessment of when an issue is ripe for review do so at the risk of finding their claims time-barred."). Thus, it is not surprising that MVGC decided to avoid this risk. However, having acted prudently and filed this petition, it faces dismissal on grounds of ripeness. This is an unfortunate situation.

On the other hand, FERC's actions in this case leave something to be desired. The agency should have promptly recognized the ripeness issue and then filed a motion to dismiss in a timely fashion. This would have expedited consideration of the ripeness issue and conserved the resources of the court, FERC, MVGC, and intervenors, by avoiding the necessity of full briefing and oral argument. FERC and other agencies are well advised to file such motions in the future so as to avoid the dilemma seen in this case.

### III. CONCLUSION

Because we find the petition for review to be unripe, it is hereby dismissed without prejudice.

*So ordered.*