United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued May 8, 2001 Decided June 19, 2001 

 No. 00-1173

 Fourth Branch Associates (Mechanicville), 
 Petitioner

 v.

 Federal Energy Regulatory Commission, 
 Respondent

 Niagara Mohawk Power Corporation, 
 Intervenor

 On Petition for Review of Orders of the 
 Federal Energy Regulatory Commission

 Ben Finkelstein argued the cause for petitioner. With him 
on the briefs were Frances E. Francis, William S. Huang 
and Andrea G. Lonian.

 Monique L. Watson, Attorney, Federal Energy Regulatory 
Commission, argued the cause for respondent. With her on 
the brief was Dennis Lane, Solicitor.

 William J. Mertens was on the brief for intervenor.

 Before: Edwards, Chief Judge, Sentelle and Randolph, 
Circuit Judges.

 Opinion for the Court filed by Circuit Judge Sentelle.

 Sentelle, Circuit Judge: The Federal Energy Regulatory 
Commission ("FERC") issued a joint license to Fourth 
Branch Associates (Mechanicville) and Niagara Mohawk Pow-
er Corporation to redevelop the Mechanicville Hydroelectric 
Plant, owned by Niagara Mohawk. The relationship between 
the co-licensees eroded, and a spate of litigation ensued. 
Within two years of receiving the license, Fourth Branch filed 
a complaint with the Commission alleging that Niagara Mo-
hawk was engaging in anticompetitive conduct in violation of 
the Federal Power Act, see 16 U.S.C. s 803(h), in attempting 
to limit the power output of the Mechanicville plant by 
refusing to purchase power from the plant.

 After efforts to mediate the dispute failed, the Commission 
issued an order dismissing the complaint because Fourth 
Branch had not articulated facts sufficient to establish a claim 
for anticompetiveness. See Fourth Branch Assocs. (Mechan-
icville) v. Niagara Mohawk Power Corp., 89 F.E.R.C. 
p 61,194 (1999). Explaining that the two parties were unable 
to continue operating the plant--because one is unwilling 
(Niagara Mohawk) and the other unable (Fourth Branch)--
the Commission gave notice of its intent to accept the parties' 
implied surrender of the Mechanicville license. See id. at 
61,598. The Commission subsequently denied Fourth 
Branch's request for rehearing. See Fourth Branch Assocs. 
(Mechanicville) v. Niagara Mohawk Power Corp., 90 
F.E.R.C. p 61,250 (2000).

 Fourth Branch petitions for review of these orders. First, 
it contends that the finding of implied surrender is unreason-
able, arbitrary and capricious, and unsupported by substantial 
evidence. Second, it maintains that the dismissal of its 

anticompetitiveness complaint was arbitrary and capricious 
and not supported by substantial evidence. Because there 
has been no final agency action, we do not have jurisdiction to 
consider the implied surrender finding. Additionally, for 
reasons more fully set out below, we hold that the Commis-
sion did not err in dismissing Fourth Branch's complaint.

 I. BACKGROUND

 The Mechanicville Hydroelectric Plant, located on the Hud-
son River in New York, is listed on the National Register of 
Historic Places. In fact, until recently it was the oldest 
continuously operating hydroelectric plant in the country. 
The Mechanicville plant is also at the heart of a protracted 
battle between Fourth Branch and Niagara Mohawk.1 At 
various times, this battle has been waged before the New 
York Public Service Commission, the Albany County Su-
preme Court, the Third Department of the Appellate Division 
of the New York Supreme Court, the U.S. Bankruptcy Court 
for the Northern District of New York, the U.S. District 
Court for the Northern District of New York, the Federal 
Energy Regulatory Commission--and now this Court.

 The relationship between Fourth Branch and Niagara Mo-
hawk began peacefully in 1987, when they applied jointly to 
redevelop the Mechanicville plant under a new FERC license. 
In August 1989, the two companies entered into several 
contracts under which Fourth Branch agreed to operate the 
plant and Niagara Mohawk agreed to purchase power from 
the plant. Almost immediately the relationship began to 
deteriorate.

 In 1990, the New York Public Service Commission rejected 
the power purchase agreement. Three years later, when the 

__________
 1 A more complete history of the two companies' troubles is 
recounted in Niagara Mohawk Power Corp., 74 F.E.R.C. p 61,352, 
62,079-81 (1996); Fourth Branch Assocs. (Mechanicville) v. Niaga-
ra Mohawk Power Corp., 89 F.E.R.C. p 61,194, 61,589-93 (1999), 
reh'g denied, 90 F.E.R.C. p 61,250 (2000); and Fourth Branch 
Assocs. (Mechanicville) v. Niagara Mohawk Power Corp., 90 
F.E.R.C. p 61,250, 61,837-39 (2000).

companies' efforts to renegotiate the purchase agreement 
collapsed, Niagara Mohawk terminated the operation agree-
ment. These actions are the basis of ongoing litigation in 
New York's state courts.

 Meanwhile, in 1993, FERC issued the license to Fourth 
Branch and Niagara Mohawk. The following year, after 
Niagara Mohawk stopped paying Fourth Branch for power it 
received from the Mechanicville plant, Fourth Branch filed 
for Chapter 11 bankruptcy. Fourth Branch asked the bank-
ruptcy court to require Niagara Mohawk to accept and pay 
for power from the plant. After initially granting the re-
quest, the court authorized Niagara Mohawk to "cease ac-
cepting electricity" from Fourth Branch. In re Fourth 
Branch Assocs. Mechanicville, No. 94-10972, slip op. at 2 
(Bankr. N.D.N.Y. Nov. 22, 1995) (order granting motion in 
part and denying motion in part). By 1996, the bankruptcy 
court dismissed Fourth Branch's Chapter 11 claim for lack of 
prosecution.

 In 1995, Fourth Branch filed a complaint with FERC 
alleging that Niagara Mohawk was engaging in anticompeti-
tive conduct by attempting to limit the power output of the 
Mechanicville plant. In March 1996, after asking the parties 
to apply either for a license transfer or surrender, the 
Commission ordered that a settlement judge mediate the two 
companies' dispute. Niagara Mohawk Power Corp., 74 
F.E.R.C. p 61,352, 62,081 (1996). Initially, the mediation 
seemed to be successful: Fourth Branch agreed to purchase 
Niagara Mohawk's interest in the Mechanicville project. Ni-
agara Mohawk Power Corp., 78 F.E.R.C. p 63,004 (1997). 
Unfortunately, the success was short lived--Fourth Branch 
was unable to obtain funding to make the purchase. See id. 
at 65,127. FERC staff responded by again asking for a plan 
to transfer the Mechanicville license or surrender it. By that 
time, Fourth Branch had vacated the Mechanicville plant, 
"apparently as the result of an eviction action brought by 
Niagara Mohawk in a New York court." Fourth Branch 
Assocs., 89 F.E.R.C. at 61,590.

 In 1997, Niagara Mohawk moved to dismiss Fourth 
Branch's complaint. In its motion, Niagara Mohawk contend-
ed that the complaint was moot in light of the bankruptcy 
court's ruling that Niagara Mohawk was not obligated to 
purchase power from the Mechanicville project. Around this 
same time, Niagara Mohawk completely stopped producing 
power at the plant.

 The following year, Fourth Branch submitted a unilateral 
settlement offer, proposing to pay Niagara Mohawk fair 
market value for its interest in the Mechanicville project. 
(The value was to be determined by a federal district court in 
a condemnation proceeding initiated by Fourth Branch.) 
Within five months, Fourth Branch amended its offer, now 
proposing that Niagara Mohawk transfer its interest in the 
plant to Fourth Branch at no cost and then purchase power 
produced there by Fourth Branch. Not surprisingly, Niaga-
ra Mohawk opposed this offer and instead asked the Commis-
sion to deem the Mechanicville license impliedly surrendered.

 On November 9, 1999, the Commission dismissed Fourth 
Branch's complaint and unilateral settlement offer. See id. at 
61,589. In its decision, the Commission found that the Me-
chanicville license had not been violated and that the plant 
was being adequately maintained. See id. at 61,596-97 & 
n.64. The Commission also concluded that Fourth Branch 
had not "set forth any facts that warrant a further investiga-
tion of its allegation that Niagara Mohawk has engaged in 
anticompetitive behavior under the Mechanicville license." 
Id. at 61,597.

 Finally, the Commission determined that the "public inter-
est will be best served if the Mechanicville Project license is 
terminated." Id. It explained that "the doctrine of implied 
surrender" offered an appropriate resolution to the "excep-
tional circumstances" of this dispute. Id. at 61,597-98. Con-
sequently, the November 1999 order gave Niagara Mohawk 
and Fourth Branch notice that the Commission "intend[s] to 
accept surrender of the license." Id. at 61,598. Accordingly, 
the Commission instructed its staff to "initiate a proceeding 
to prepare an environmental analysis, which will include 

consultation on the disposition of the historic property, to 
determine what restoration measures are appropriate before 
an order is issued accepting surrender of the license." Id. at 
61,598 n.73.

 Fourth Branch requested a rehearing. On March 16, 2000, 
the Commission denied this request. See Fourth Branch 
Assocs. (Mechanicville) v. Niagara Mohawk Power Corp., 90 
F.E.R.C. p 61,250 (2000). In its denial, the Commission reit-
erated its earlier conclusions. The Commission also clarified 
that it will not make a "final decision on whether to accept the 
implied license surrender until" it has conducted analyses and 
consultations required under the National Environmental Pol-
icy Act, 42 U.S.C. s 4332, and the National Historic Preserva-
tion Act, 16 U.S.C. s 470f. 90 F.E.R.C. at 61,840 n.17. In 
addition, the Commission declared that it would examine 
"reasonable alternatives to license surrender." Id. at 61,840.

 Fourth Branch petitions for review of these orders. In its 
petition, Fourth Branch primarily argues that (1) the finding 
that the co-licensees had impliedly surrendered the Mechanic-
ville license is unreasonable, arbitrary and capricious, and 
unsupported by substantial evidence; and (2) the dismissal of 
its complaint alleging that Niagara Mohawk had engaged in 
anticompetitive behavior is arbitrary and capricious and un-
supported by substantial evidence. In response, the Commis-
sion contends that we lack jurisdiction over Fourth Branch's 
petition. We must address this contention first.

 II. JURISDICTION

 Although the Commission maintains both that Fourth 
Branch lacks standing and that its petition is not ripe for 
review, we "need not identify every ground for holding that a 
claim is not justiciable." Indep. Petroleum Ass'n of Am. v. 
Babbit, 235 F.3d 588, 594 (D.C. Cir. 2001). Indeed, we have 
no trouble dismissing a claim "based on one jurisdictional bar 
rather than another." Louisiana Envtl. Action Network v. 
Browner, 87 F.3d 1379, 1384 (D.C. Cir. 1996). Here, Fourth 
Branch's challenge to the implied surrender proceeding is not 
a challenge to any final agency action.

 A party may only petition for judicial review of a final 
agency action. See 5 U.S.C. s 704; 16 U.S.C. s 825l(b); 
Papago Tribal Util. Auth. v. FERC, 628 F.2d 235, 238-39 
(D.C. Cir. 1980). If the agency's action is not final, we cannot 
reach the merits of the petition. See Public Citizen v. Office 
of the U. S. Trade Representatives, 970 F.2d 916, 918 (D.C. 
Cir. 1992). When assessing whether an agency action is final, 
we consider "whether the agency's position is 'definitive' and 
whether it has a 'direct and immediate ... effect on the day-
to-day business' of the parties." Ciba-Geigy Corp. v. U.S. 
EPA, 801 F.2d 430, 436 (D.C. Cir. 1986) (quoting FTC v. 
Standard Oil Co. of Cal., 449 U.S. 232, 239 (1980) (internal 
quotes omitted)).

 The initiation of an implied surrender proceeding is not a 
final agency action. The Commission has merely "issue[d] 
notice of its intent to accept the implied surrender of the 
project license." Fourth Branch Assocs., 89 F.E.R.C. at 
61,589. In its order denying Fourth Branch's rehearing 
request, the Commission expressly stated that it has made 
"no final decision on whether to accept the implied license 
surrender." Fourth Branch Assocs., 90 F.E.R.C. at 61,840 
n.17. There is nothing definitive in an agency's intending to 
do something, and an agency that has made "no final deci-
sion" could not possibly have taken a final action. Pending 
completion of the proceeding, the Commission may or may 
not accept implied surrender of the Mechanicville license. 
We do not have jurisdiction to become entangled in "uncer-
tain and contingent future events that may not occur as 
anticipated, or indeed may not occur at all." Metzenbaum v. 
FERC, 675 F.2d 1282, 1289 (D.C. Cir. 1982) (internal quotes 
omitted).

 Furthermore, we do not detect what effect the Commis-
sion's action has had (or could have) on Fourth Branch's 
business. The Commission's decision to initiate an implied 
surrender proceeding has not imposed any obligation, denied 
any right, or formalized any legal relationship. See Alabama 
Power Co. v. FERC, 993 F.2d 1557, 1566 (D.C. Cir. 1993). If 
we conclude that the license was impliedly surrendered, 
Fourth Branch obviously would remain exactly in the same 

position it is now--and the Commission still might not accept 
the implied surrender. Likewise, even if we were to conclude 
that the license had not been impliedly surrendered, the 
Mechanicville plant would continue to sit in the same condi-
tion, and Fourth Branch would remain in the same position, a 
co-licensee who is unable to enter the plant, let alone produce 
power there. Plainly, our abstention will not "result in 
irreparable injury" to Fourth Branch. Papago Tribal Util. 
Auth., 628 F.2d at 238. Until the Commission reaches a final 
decision--either accepting the surrender or coming to some 
alternative resolution--Fourth Branch's challenge is not fit 
for review.

 Fourth Branch argues that pursuant to Rule 27(g) of this 
Circuit, the Commission should have raised its jurisdictional 
objection within 45 days of this case being docketed. The 
Commission first contended that we lack jurisdiction in its 
response brief, which it filed 271 days after this case was 
docketed. The Commission's foot-dragging certainly 
"leave[s] something to be desired." Mississippi Valley Gas 
Co. v. FERC, 68 F.3d 503, 510 (D.C. Cir. 1995). Neverthe-
less, it does not confer jurisdiction on this Court or compel us 
to consider a claim based on an agency action that is not final. 
See Fed. R. App. P. 1(b).

 In contrast to its initiation of the implied surrender pro-
ceeding, the Commission's dismissal of Fourth Branch's com-
plaint against Niagara Mohawk is unquestionably a final 
agency action. In its order denying rehearing, the Commis-
sion was clear that its decision was final: although it will 
consider alternatives to implied surrender in the ongoing 
proceeding, it unequivocally stated that it would not reconsid-
er Fourth Branch's complaint. See Fourth Branch Assocs., 
90 F.E.R.C. at 61,840. The Commission's brief does not 
explain why the dismissal of Fourth Branch's complaint is not 
ripe for review nor why Fourth Branch lacks standing to 
challenge it. The dismissal of such a complaint is a final 
agency action that we are empowered to review, and there is 
no reason to refrain from considering the merits of the 
remaining claims in Fourth Branch's petition. See Papago 
Tribal Util. Auth., 628 F.2d at 239.

 III. THE MERITS OF FOURTH 
 BRANCH'S PETITION

 Section 10(h)(1) of the Federal Power Act prohibits "[c]om-
binations, agreements, arrangements, or understandings, ex-
press or implied, to limit the output of electrical energy, to 
restrain trade, or to fix, maintain, or increase prices for 
electrical energy or service." 16 U.S.C. s 803(h)(1). Relat-
edly, under s 10(h)(2), "conduct under the license" that con-
flicts with "the policies expressed in the antitrust laws" and is 
"not otherwise justified by the public interest ... shall be 
prevented or adequately minimized." Id. s 803(h)(2).

 In its complaint, Fourth Branch alleged that Niagara Mo-
hawk attempted to "coerce [Fourth Branch] into an agree-
ment or arrangement to limit the electrical energy available 
from the Mechanicville Project." The only fact that Fourth 
Branch offered to support its allegation is that Niagara 
Mohawk "refus[es] to accept Project power" from the Me-
chanicville plant, knowing that Fourth Branch's "existence 
depends" on the revenue from such sales. The Commission 
refused to investigate this complaint, explaining that Fourth 
Branch had failed to "set forth any facts that warrant a 
further investigation." Fourth Branch Assocs., 89 F.E.R.C. 
at 61,597. Specifically, the Commission concluded that 
Fourth Branch had "not suggested that Niagara Mohawk 
engaged in" activities barred by s 10(h)(1) and had not 
complained about any conduct under the license as required 
by s 10(h)(2). In its petition, Fourth Branch argues that the 
Commission's decision is (1) arbitrary and capricious because 
it represents an "unexplained about-face" from a previous 
statement in which the Commission noted the seriousness of 
Fourth Branch's allegations and (2) unsupported by substan-
tial evidence because the record demonstrates that Niagara 
Mohawk violated the license.

 Our precedent is clear: the Commission "need not launch a 
full investigation just because a party cries 'anticompetitive 
behavior.' " Michigan Pub. Power Agency v. FERC, 963 
F.2d 1574, 1583 (D.C. Cir. 1992). Here, the Commission did 
not act arbitrarily or capriciously in concluding that Fourth 

Branch's vague assertions did not establish adequate grounds 
for investigating Niagara Mohawk's conduct. Although there 
is no question "the co-licensees are at loggerheads," Fourth 
Branch Assocs., 89 F.E.R.C. at 61,596, Fourth Branch did not 
allege any collusive behavior by Niagara Mohawk as required 
to establish a claim under s 10(h)(1). If anything, Niagara 
Mohawk's refusal to take power from Fourth Branch might 
be a violation of their contracts, not an effort to restrain trade 
"under the license." See 16 U.S.C. s 803(h)(2). If Fourth 
Branch believes that Niagara Mohawk's actions interfere with 
its ability to operate the project as they agreed, Fourth 
Branch should proceed with contract claims in state court (as 
it has done). Indeed, the Commission came to this conclusion 
in the orders now under review. See Fourth Branch Assocs., 
90 F.E.R.C. at 61,839; Fourth Branch Assocs., 89 F.E.R.C. at 
61,597. The Commission properly concluded that far from 
reflecting anticompetitive conduct, Niagara Mohawk's divesti-
ture of its hydroelectric projects was ordered by the New 
York Public Service Commission as part of an industry 
restructuring. See Fourth Branch Assocs., 89 F.E.R.C. at 
61,597. These conclusions represent a reasonable basis for 
not investigating Niagara Mohawk's conduct.

 Fourth Branch's claim that the Commission's orders repre-
sent an "unexplained about-face" is based on a statement in 
the Commission's order requiring the parties to mediate their 
dispute. In that order, the Commission wrote that it was 
"concerned with the seriousness of the antitrust allegations in 
the complaint." Niagara Mohawk Power Corp., 74 F.E.R.C. 
at 62,081. Despite what Fourth Branch now suggests, the 
Commission was not endorsing the viability or validity of 
Fourth Branch's claims. Rather, it was explaining that medi-
ation seemed appropriate in light of: (1) Fourth Branch's 
complaint (and subsequent request for mediation) and (2) the 
Commission's concern with the "safe operation of the Me-
chanicville Project over the 47 years remaining in the term of 
its license." Id. The Commission never ruled that Fourth 
Branch actually articulated an anticompetitiveness claim wor-
thy of investigation. Rather, the claim--in conjunction with 
the numerous "ongoing controversies between the two co-

licensees"--simply justified the Commission's attempt "to 
mediate a reasonable and workable solution to the problems 
presented by the Mechanicville Project." Id. This attempt 
is not inconsistent with the Commission's ultimate conclusion 
that Fourth Branch had not "set forth any facts that warrant 
a further investigation." Fourth Branch Assocs., 89 F.E.R.C. 
at 61,597. The Commission never held anything different. It 
simply had stated that the Fourth Branch's allegations were 
serious enough to merit mediation, but only when considered 
in tandem with the myriad other disputes between the parties 
and the Commission's concern with the "safe and efficient 
performance" of the project. Niagara Mohawk Power Corp., 
74 F.E.R.C. at 62,081.

 In its petition, Fourth Branch raises several other ancillary 
issues. We have considered each of these and find them 
meritless. The Commission's orders are supported by sub-
stantial evidence and do not represent abuses of discretion.

 IV. CONCLUSION

 For the foregoing reasons, the petition for review is denied.