# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-1278                September Term, 2023

FILED ON: JANUARY 18, 2024

ANTERO RESOURCES CORPORATION AND MU MARKETING LLC,
           PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
           RESPONDENT

PROJECT CANARY AND TENNESSEE GAS PIPELINE COMPANY, L.L.C.,
           INTERVENORS

Consolidated with 22-1280

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

Before: SRINIVASAN, *Chief Judge*, WALKER, and PAN, *Circuit Judges*.

## <u>J U D G M E N T</u>

These consolidated cases were considered on the record from the Federal Energy Regulatory Commission and on the briefs and arguments of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is:

**ORDERED AND ADJUDGED** that the petitions for review be **DISMISSED**.

\*     \*     \*

Tennessee Gas Pipeline Company, L.L.C. ("Tennessee") is a pipeline company that sought and received approval from the Federal Energy Regulatory Commission ("FERC") to implement a "pooling service" for buyers and sellers of responsibly sourced gas that is "producer certified." *Tenn. Gas Pipeline Co., LLC*, 179 FERC ¶ 61,233 (2022) (Tariff Order), *modified on denial of*

*reh'g*, 181 FERC ¶ 61,063 (2022) (Rehearing Order). Petitioners Antero Resources Corporation and MU Marketing LLC (together, "Antero") and EQT Energy, LLC are producers of responsibly sourced gas that have used Tennessee's gas transportation services. Petitioners challenge FERC's approval of the new pooling service, asserting that they are harmed by Tennessee's unsupervised control over the environmental standards delineating what gas can be bought and sold within the producer-certified pool. Because petitioners fail to establish standing, we dismiss their petitions for review.

I.

Under the Natural Gas Act ("NGA"), FERC has jurisdiction over the interstate transportation and wholesale sale of natural gas. *See* 15 U.S.C. § 717(a)–(b). To ensure that gas pipelines charge "just and reasonable rates" for transportation, the NGA requires pipelines to file "all rates and charges for any transportation or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges" in public tariffs overseen by FERC. 15 U.S.C. § 717c(c); *see also* 18 C.F.R. § 154.1(b).

As part of this mandate, FERC regulates pooling services operated by pipelines. "Pooling refers to the aggregation of gas from multiple physical or logical points to a single physical or logical point." *184 CFR Part 284: Standards for Bus. Pracs. of Interstate Nat. Gas Pipelines*, 83 FERC ¶ 61,029, at P 4 (1998). Pooling brings buyers and sellers together at certain points, thereby facilitating their transactions. Pooling can be achieved physically or virtually — "paper pooling" combines an accounting fiction and a scheduling service to enable sales to occur. *See Transcon. Gas Pipe Line Corp.*, 130 FERC ¶ 61,109, at P 5 n.7 (2010) ("Paper pooling refers to the establishment of a paper or virtual pool into which gas supplies may be injected without charge from anywhere within [a geographical] zone.").

Tennessee has offered paper pooling for years as a free and voluntary option within its gas transportation services; it files the terms of this existing service in its FERC-approved tariff. *Tenn. Gas Pipeline Co., LLC*, 73 FERC ¶ 61,278, 61,764–65 (1995). In 2021, Tennessee proposed adding a new service option to its pipeline system — a paper pooling option exclusively for responsibly sourced gas ("RSG"). RSG refers to gas produced in a more environmentally conscious way, often with lower methane emissions. To use the new pooling option, gas producers must certify that their gas meets certain environmental criteria. Such "producer-certified gas" is known as "PCG." The PCG pooling service is free and offers the same services as Tennessee's existing paper pooling service. Because there is no industry-wide standard for defining RSG, Tennessee sets its own "PCG criteria," which are posted on its website.

Petitioners allege that FERC's approval of the new pooling service was arbitrary and capricious because the Commission declined to exercise any oversight over the PCG criteria that governs access to the service. Tennessee's tariff incorporating the new service option went into effect on July 1, 2022. FERC denied petitioners' requests for rehearing on October 25, 2022, and petitioners timely petitioned for review before this court.

2

II.

Under the Natural Gas Act, "[a]ny party to a proceeding . . . aggrieved by an order issued by the Commission in such proceeding" can seek judicial review. 15 U.S.C. § 717r(b). Parties are aggrieved under the Natural Gas Act if they satisfy the constitutional and prudential requirements for standing. *See PNGTS Shippers' Grp. v. FERC*, 592 F.3d 132, 136 (D.C. Cir. 2010). Petitioners bear the burden of proving the elements of constitutional standing: (i) a concrete and particularized injury, (ii) a causal link between that injury and the FERC order being challenged, and (iii) that the injury will likely be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Petitioners in cases involving direct review of administrative actions must set forth their basis for standing in a separate section of their opening brief; and must provide both arguments and evidence of standing where standing is not apparent from the administrative record. *See* D.C. Cir. R. 28(a)(7).[1] Evidence that is lengthy and not contained in the administrative record should be submitted along with the opening brief. *Id.*; *see also Sierra Club*, 292 F.3d at 900. Standing arguments raised in a reply brief are ordinarily forfeited. *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) ("Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction."). Importantly, to establish standing in an agency appeal, a petitioner must rely on evidence — rather than on factual allegations — because "a petitioner seeking review in the court of appeals does not ask the court merely to assess the sufficiency of its legal theory. Rather, like a plaintiff moving the district court for summary judgment, the petitioner is asking the court of appeals for a final judgment on the merits." *Sierra Club*, 292 F.3d at 899.

This court enforces Rule 28(a)(7) less stringently only where it excuses petitioners' omissions in their opening briefs for good cause. This court has previously found good cause in two circumstances: (1) where "the parties reasonably, but mistakenly, believed that the initial filings before the court had sufficiently demonstrated standing"; and (2) "where the parties reasonably assumed that their standing was self-evident from the administrative record." *Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 614 (D.C. Cir. 2019) (cleaned up). Neither exception applies here, and neither petitioner has asserted that this case falls under an exception.

---

[1] The rule states, in relevant part: "In cases involving direct review in this court of administrative actions, the brief of the appellant or petitioner must set forth the basis for the claim of standing. This section, entitled 'Standing,' must follow the summary of argument and immediately precede the argument. When the appellant's or petitioner's standing is not apparent from the administrative record, the brief must include arguments and evidence establishing the claim of standing. *See Sierra Club v. EPA*, 292 F.3d 895, 900–01 (D.C. Cir. 2002). If the evidence is lengthy, and not contained in the administrative record, it may be presented in a separate addendum to the brief." D.C. Cir. R. 28(a)(7).

III.

Petitioners were required to establish standing in their opening brief, but they did not do so. Their standing is not obvious from the administrative record. FERC's order does not directly regulate petitioners; and it does not affect the rates or terms of the existing transportation service that petitioners receive from Tennessee. Instead, petitioners allege that FERC's refusal to assert jurisdiction over the PCG criteria will affect the price that petitioners can charge for selling their RSG. Petitioners must explain and support the causal connection between FERC's order and those alleged effects, but as explained below, they do not do so. The PCG pooling service option has been in effect for over a year, but neither petitioner has provided evidence of a concrete or imminent harm to their economic interests.

A.

Antero's allegation of harm in the standing section of its opening brief states only this:

> Pipeline customers like Antero have standing to challenge FERC orders approving changes to pipeline "rates" and "polic[ies]". *See [Miss. Valley Gas Co. v. FERC*, 68 F.3d 503, 507 (D.C. Cir. 1995)]; *ANR Pipeline Co. v. FERC*, 771 F.2d 507, 516 (D.C. Cir. 1985). The Commission's orders in this case affect Antero and other shippers' access to the liquidity and any premiums associated with PCG pools.

Antero Opening Br. 17 (first alteration in Antero's brief).

Antero neither explains nor cites any authority for the broad proposition that all pipeline customers have standing to challenge all FERC orders pertaining to pipeline "policies." The instant rule does not affect "rates" because the new pooling service is free, just like the existing pooling service. Both cases cited by Antero involved increased rates and therefore are inapposite. *See Miss. Valley Gas*, 68 F.3d at 508 ("[Petitioner] has clearly demonstrated 'injury in fact' because the FERC orders it challenges affect the rates it will pay [the natural gas company].");  *ANR Pipeline*, 771 F.2d at 516 (FERC order would lead pipeline to "file for an increase in the rates it charges to [the petitioner]."). Moreover, Antero does not explain how FERC's order affects its "access to the liquidity and any premiums associated with PCG pools." Antero Opening Br. 17. Thus, Antero's standing argument is plainly inadequate.

At oral argument, Antero relied on a procedural-standing theory, which it raised for the first time in its reply brief. Oral Argument at 13:38, Antero Res. Co. v. FERC (No. 22-1278) (describing Antero's procedural injury); Antero Reply Br. 3–8. That argument has been forfeited. Antero does not assert that it had good cause for introducing a procedural-standing argument — which is an independent, non-obvious legal theory — in its reply brief. *Cf. Twin Rivers*, 934 F.3d at 614 (petitioners need good cause to introduce new standing arguments on reply).

4

B.

EQT also failed to properly present arguments and evidence about standing in its opening brief. EQT's allegation of harm in the standing section of its brief merely states:

> FERC's determinations in the underlying orders in this proceeding grant improper discretion over methane intensity to a single pipeline, thereby harming producers and marketers of low-methane-intensity natural gas, including EQT Energy and its affiliates—which are active participants and leaders in producing and marketing certified natural gas and lowering the methane intensity of their natural gas.

EQT Opening Br. 21.

EQT does not explain why giving Tennessee "discretion over methane intensity" will "harm" all "producers and marketers of low-methane-intensity natural gas." Nor does it cite any evidence of this alleged future "harm." This is a clear violation of Rule 28(a)(7). At oral argument, EQT said that it is harmed by a world in which responsibly-sourced gas is sold through pooling rather than through a "bilateral transaction." Oral Argument at 33:50, Antero Res. Co. v. FERC (No. 22-1278). The word "bilateral" does not appear in EQT's opening brief, and there is no evidence that the PCG pooling option will cause EQT to suffer concrete, imminent harm. The PCG pooling option has now been available for over a year, but no one has used it and no harm has occurred.

EQT's asserted injury in its briefing and at oral argument is based upon a hypothetical chain of events. It posits that other pipelines might follow Tennessee's lead and create pooling services of their own. EQT further speculated at oral argument that its customers might shift to lower-quality products in the PCG pool, which ultimately might cause the premiums that EQT charges for its RSG to fall. Oral Argument at 51:55, Antero Res. Co. v. FERC (No. 22-1278) (describing the potential effects of Tennessee's PCG pooling service on EQT's sales). EQT also relies on statements like the following: "In blessing the problematic proposal of one pipeline, however, FERC sent a signal that it is attempting to regulate beyond its authority, jurisdiction, or expertise regarding the methane intensity of gas, thereby affecting *all* current and prospective producers of the same." EQT Reply Br. 7–8 (emphasis added). None of those arguments is supported by evidence.

IV.

Perhaps in an earlier era our FERC precedents did not always make clear that an injury must be imminent when a petitioner alleges a future economic injury. But our more recent precedents require a searching inquiry. They hold that a party's injury must be "concrete, particularized, actual and imminent," and "[a] harm that will not occur unless a series of contingencies occurs at some unknown future time is not" a sufficient injury to sustain standing. *Kan. Corp. Comm'n v. FERC*, 881 F.3d 924, 926 (D.C. Cir. 2018). While injury can be established based on arguments "firmly rooted in the basic laws of economics" — and in such instances, there

5

is no need for a "complex chain of reasoning" — petitioners fall short of demonstrating such an injury here. *Growth Energy v. EPA*, 5 F.4th 1, 33 (D.C. Cir. 2021) (internal quotations omitted). Neither of the petitioners' opening briefs provide any details of when or how the harms they describe will occur. Instead, they posit that a decrease in the price of their RSG may occur at some indefinite point in the future. Their arguments are inadequate and unsupported by evidence. We accordingly dismiss their petitions for review.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

6